# UNITED STATES *v.* CALIFORNIA AND OREGON LAND COMPANY.

# CALIFORNIA AND OREGON LAND COMPANY *v.* UNITED STATES.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

Nos. 4, 5.  Argued March 14, 17, 1902.  Reargued December 9, 10, 1902.  Reargued January 5, 6, 7, 1904.  Decided February 1, 1904.

A decree rendered upon a bill in equity brought under the Act of March 2, 1889, 25 Stat. 850, to have patents for land declared void as forfeited and to establish the title of the United States to the land, is a bar to a subsequent bill brought against the same defendants to recover the same land on the ground that it was excepted from the original grant as an Indian reservation.

As a general rule, a party asserting a right by suit is barred by a judgment or decree upon the merits as to all *media concludendi* or grounds for asserting the right, known when the suit was brought.

The general rule is, where a bill is dismissed, to dismiss the cross bill also.

THE facts are stated in the opinion of the court.

*Mr. Charles W. Rusell* Special Assistant Attorney General, for the United States.

*Mr. John F. Dillon*, and *Mr. Aldis B. Browne*, with whom *Mr. Alexander Britton* was on the brief, for the California and Oregon Land Company.

Mr. Justice HOLMES delivered the opinion of the court.

These are cross appeals from a decree of the United States Circuit Court. The bill was brought for the purpose of having certain patents of land issued by the United States declared void. These patents were issued on April 21, 1871, December 8, 1871, and April 2, 1873, to the Oregon Central Military Road Company, under an act of Congress of July 2, 1864, 13 Stat. 355, granting lands to the State of Oregon to aid in the construction of a wagon road, and in pursuance of

a grant of the same lands by the State to the Road Company on October 24, 1864. The California and Oregon Land Company claims through mesne conveyances from the patentee. The ground of the bill, so far as the argument before us is concerned, is that the lands in controversy were within the Klamath Indian Reservation, and therefore were "lands heretofore reserved to the United States" within the proviso reserving such lands in the grant of July 2, 1864. As our decision is upon grounds independent of this question, it is unnecessary to state the legislation and facts upon which that controversy turns.

One of the pleas of the Land Company is that on August 30, 1889, the United States filed an earlier bill in the United States Circuit Court in respect of these same lands, praying, like the present one, that the patents be declared void; that the Land Company pleaded matters showing that the patents were valid, and also that it was a purchaser for valuable consideration without notice; and that on March 29, 1893, a final decree was entered finding the facts to be as alleged by the Land Company, including the allegation that the Land Company was a *bona fide* purchaser for value, and dismissing the bill on that ground. The Land Company also filed a cross bill in the present suit to enjoin the allotments of said lands and the issue of patents for the same to the Indians. The cross bill was demurred to.

The Circuit Court sustained the demurrer, adjudged the plea to be bad, and entered a decree declaring the patents void. We have to deal only with the before-mentioned plea.

The former bill was brought in pursuance of the act of Congress of March 2, 1889, 25 Stat. 850. This act recited that the Oregon legislature had memorialized Congress, and had alleged that certain of the wagon roads in the State were not completed within the time required by the grants of the United States, and therefore enacted that suits should be brought in the United States Circuit Court against all claimants of any interest under the grant of 1864, and certain others, "to determine the questions of the seasonable and proper completion of said roads in accordance with the terms of the granting

acts. . . . The legal effect of the several certificates of the Governors of the State of Oregon of the completion of said roads, and the right of resumption of such granted lands by the United States." The court was authorized to render judgment of forfeiture "saving and preserving the rights of all *bona fide* purchasers of either of said grants or of any portion of said grants for a valuable consideration, if any such there be. Said suit or suits shall be tried and adjudicated in like manner and by the same principles and rules of jurisprudence as other suits in equity are therein tried." (The act of March 2, 1896, 29 Stat. 42, also confirmed the title of *bona fide* purchasers.)

By § 2, " The State of Oregon, and any person or corporation claiming any interest under or through the grants aforesaid in the lands to be affected by said suit or suits, and whether made a party thereto or not, may intervene therein by sworn petition to defend his interest therein, as against the United States, or against each other, and affecting the said question of .forfeiture, and may, upon such petition for intervention, also put in issue and have adjudicated and determined any other question, whether of law or of fact, which may be in dispute between said intervener and the United States, and affecting the right or title to any part of the lands claimed to have been embraced within the grants. . . . Should the lands embraced within said grants or either of them. or any portion thereof, be declared forfeited by the final determination of said suit or suits, the same shall be immediately restored to the public domain and become subject to disposal under the general land laws; and should the final determination of said suit or suits maintain the right of the aforesaid wagon-road grantees. or their assigns to the lands embraced in said grants, the Secretary of the Interior shall forthwith adjust said grants in accordance with such determination, and shall cause patents to be issued for the lands inuring to said grantees under said wagon-road grants and which have been heretofore unpatented."

On the general principles of our law it is tolerably plain that the decree in the suit under the foregoing statute, would

be a bar. The parties, the subject matter and the relief sought all were the same. It is said, to be sure, that the United States now is suing in a different character from that in which it brought the former suit. There it sued for itself—here it sues on behalf of the Indians. But that is not true in any sense having legal significance. It would be true of a suit by an executor as compared with a suit by the same person on his own behalf. But that is because in theory of law the executor continues the *persona* of the testator, and therefore is a different person from the natural man who fills the office. This is recognized in *Leggott* v. *Great Northern Ry.*, 1 Q. B. D. 599, 606, cited for the United States. Here the plaintiff is the same person that brought the former bill, whatever the difference of the interest intended to be asserted. See *Werlein* v. *New Orleans*, 177 U. S. 390, 400, 401. The best that can be said, apart from the act just quoted, to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. Formerly it sought to avoid the patents by way of forfeiture. Now it seeks the same conclusion by a different means, that is to say, by evidence that the lands originally were excepted from the grant. But in this, as in the former suit, it seeks to establish its own title to the fee.

It may be the law in Scotland that a judgment is not a bar to a second attempt to reach the same result by a different *medium concludendi*. *Phosphate Sewage Co.* v. *Molleson*, 5 Ct. of Sess. Cas. (4th Ser.) 1125, 1139; although in the same case on appeal Lord Blackburn seemed to doubt the proposition if the facts were known before. *S. C.*, 4 App. Cas. 801, 820. But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim, *Fetter* v. *Beale*, 1 Salk. 11; *Trask* v. *Hartford & New Haven Railroad*, 2 Allen, 331; Freeman, Judgments, 4th ed. §§ 238, 241; and, *a fortiori*, he cannot divide the grounds of recovery. Unless the statute of 1889 put the former suit upon a peculiar footing, the United States was bound then to bring forward all the grounds it had for declaring the patents void, and when the bill was dismissed was barred as to all by the decree. *Werlein* v. *New Orleans*

177 U. S. 390; *Bienville Water Supply Co.* v. *Mobile,* 186 U. S. 212, 216, 217; *Hoseason* v. *Keegen,* 178 Massachusetts, 247; *Wildman* v. *Wildman,* 70 Connecticut, 700, 710; *Sayers* v. *Auditor General,* 124 Michigan, 259; *Foster* v. *Hinson,* 76 Iowa, 714, 720; *State* v. *Brown,* 64 Maryland, 199; *Boyd* v. *Boyd,* 53 App. Div. N. Y. 152, 159; *Shaffer* v. *Scuddy,* 14 La. Ann. 575; *Henderson* v. *Henderson,* 3 Hare, 100, 115.

The question then is narrowed to whether the statute established a special and peculiar rule of procedure for the cases to be brought under it. No doubt it is true that the ground of recovery that was prominent in the mind of Congress was an alleged forfeiture of the grant, and therefore not unnaturally, in § 2, the result of a forfeiture is stated. But a forfeiture was not the only ground on which the United States might have prevailed. All claimants of any interest were at liberty to intervene and to have any other question affecting the title settled, and if any such other question had been raised and resolved in favor of the United States, of course the same result would have followed. But it cannot be supposed that the United States was not at liberty to raise the same issues which defendants and interveners were given the right to raise. There is no reason for such a discrimination, and its right was admitted at the argument. But if the United States was at liberty to state all its grounds for claiming the land, it was bound to do so on " the same principles and rules of jurisprudence as other suits in equity are therein tried," by which principles and rules, as has been shown, it was expressly enacted that the case should be tried. So far from establishing a special rule, the act shows an intent to settle the title once for all. It was dealing with several grants which might present different cases. It stated in terms that the suits should be brought to determine not merely the question of forfeiture, but " the right of resumption of such granted lands by the United States," § 1, and it provided that if the suits should maintain the right of the wagon-road grantees or their assigns to the lands embraced in said grants, the Secretary of the Interior should adjust the grants in accordance with the determination and issue patents for the lands to which the grantees

were entitled and which had not been patented.   See also the language of the act of March 2, 1896, § 1, 29 Stat. 42.   It would not be consistent with the good faith of the United States to attribute to it the intent to keep a concealed weapon in reserve in case these suits should fail.   On the face of the act it seems to us apparent that these suits were intended to quiet or to end the title of the wagon-road grantees.

As the bill must be dismissed there seems to be no reason why the cross bill should not be dismissed according to the general rule in such cases.   *Dows* v. *Chicago*, 11 Wall. 108. It is true that the cross bill is not merely in aid of the defence and that relief has been given upon a cross bill in such a case, notwithstanding the dismissal of the bill.   *Holgate* v. *Eaton*, 116 U. S. 33, 42; *Blythe* v. *Hinckley*, 84 Fed. Rep. 228, 236, 237.   But apart from any other questions it may be presumed that after this decision no action will be attempted based on a denial of the Land Company's title to the fee.

*Decree reversed and case remanded to the Circuit Court with instructions to enter a decree dismissing the bill and cross bill.*

MR. CHIEF JUSTICE FULLER, with whom concurred MR. JUSTICE HARLAN and MR. JUSTICE BROWN, dissenting.

It will be assumed that the lands in controversy had been reserved for the Indians prior to the taking effect of the grant, " except so far as it may be necessary to locate the route of said road through the same, in which case the right of way is granted."

The act of 1866 made provision for supplying deficiencies " occasioned by any lands sold or reserved, or to which the rights of preëmption or homestead have attached, or which for any reason were not subject to said grant."

March 2, 1889, Congress directed the Attorney General to cause a suit or suits to be brought against all persons, firms and corporations claiming interests in lands granted to the State of Oregon, by three enumerated acts of Congress, including that under consideration : " To determine the ques-

tions of the seaonable and proper completion of said roads in accordance with the terms of the granting acts, either in whole or in part, the legal effect of the several certificates of the governors of the State of Oregon of the completion of said roads, and the right of resumption of such granted lands by the United States, and to obtain judgments, which the court is hereby authorized to render, declaring forfeited to the United States, all of such lands as are coterminous with the part or parts of either of said wagon roads which were not constructed in accordance with the requirements of the granting acts, and setting aside patents which have issued for any such lands, saving and preserving the rights of all *bona fide* purchasers of either of said grants or of any portion of said grants for a valuable consideration, if any such there be. . . . "

By the second section of the act it was provided that the State or any person or corporation claiming under the grant might intervene and defend his interest therein, and might " also put in issue and have adjudicated and determined any other question, whether of law or of fact, which may be in dispute between said intervener and the United States, and affecting the right or title to any part of the lands claimed to have been embraced within the grants of land by the United States to or for either of said wagon roads. Should the lands embraced within said grants or either of them or any portion thereof, be declared forfeited by the final determination of said suit or suits, the same shall be immediately restored to the public domain and become subject to disposal under the general land laws ; and should the final determination of said suit or suits maintain the right of the aforesaid wagon road grantees or their assigns to the land embraced in said grants, the Secretary of the Interior shall forthwith adjust said grants in accordance with such determination," etc.

The act related to three wagon road grants, only one of which was involved in this case. This bill sought a forfeiture of the entire grant for reasons stated, and no other matter was put in issue. The bill covered the lands in the reservation and many thousands of acres besides. It seems to me

clear that Congress did not intend that the United States should ask a forfeiture and at the same time litigate exceptions from the grant. The second section is wholly inconsistent with such a theory. The issue was a single issue and defendants did not seek to have it expanded. The suit was decided in favor of defendants, 148 U. S. 31, and the present bill having been filed in respect of the lands of the Indian reservation it is now contended that the former decree is a bar to its prosecution.

I do not think so. The former case sought a forfeiture of the entire grant. This bill, accepting the conclusion that there could be no forfeiture, simply sought relief as to particular lands which had not been embraced in the grant and did not pass thereby but which had been patented in error. Conceding that Congress may pass title subject to Indian occupancy, it did not do so; but these lands were reserved from the grant, while in terms the right of way through the reservation was granted. Had the decree in the prior case been for the government, this right of way would have been declared forfeited with other lands included in the grant, but as the case turned out the right of way passed while the reservation remained unaffected. The cause of action in this suit is entirely different and governed by entirely different considerations from the cause of action in the prior suit. And I think the decree in the former suit operates as an estoppel only as to the point or question actually litigated and determined.

There is no hardship involved in this view, as, while the United States were shut up to the question of forfeiture, defendants were permitted to raise any questions they chose, and did not see fit to bring any other into the case.

My brothers HARLAN and BROWN concur in this dissent.