# Wilson Township, Appellant, *v.* Easton Transit Company.

*Municipalities—Townships—Street railway companies—Relocation of line—Laches—Estoppel—Injunction—Preliminary—Final decree—Practice—Equity.*

1. One who has assumed a position in a legal proceeding which has been acted upon by the opposing party may not thereafter in another proceeding assume a different position to the prejudice of such party.

2. Where a street railway company took steps to reconstruct its right of way in a township over a route not designated by its charter, and obtained from the Public Service Commission a certificate of public convenience permitting the improvement after a hearing at which the township appeared and approved the general scheme

of the improvement, but objected to certain details, and no appeal was taken from the order of the commission, and the railway company thereafter expended over $40,000, in commencing the improvement, the township was estopped from subsequently enjoining the consummation of the improvement, on the ground that it had not given its consent thereto.

3. Where the court below, sitting as a chancellor, treats the case on a bill in equity for an injunction as on final hearing, good practice requires counsel to file with the chancellor a stipulation to that effect so that a decree nisi may be entered and the case disposed of by the court in banc.

Argued March 7, 1917. Appeal, No. 312, Jan. T., 1916, by plaintiff, from decree of C. P. Northampton Co., Sept. T., 1916, No. 6, refusing an injunction, in case of Township of Wilson v. Easton Transit Company. Before MESTREZAT, POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction. Before STEWART, P. J.

The opinion of the Supreme Court states the facts.

The court on final hearing refused the injunction. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*J. W. Fox,* with him *E. J. Fox* and *Albert F. Kahn,* for appellant.—Defendant's line of railroad having been constructed over the route covered by its charter, the rights of the company with respect to the consent previously given by the township were exhausted and new authority was necessary for any deviation thereafter: Wirth et al. v. Philadelphia City Passenger Ry. Co., 2 W. N. C. 650; Chester, Darby & Philadelphia Ry. Co. v. Darby Boro., 10 Del. County 135.

*H. J. Steele,* with him *Asher Seip,* for appellee.—The right of a trolley company to diverge from its charter

route has been frequently recognized: Jordan v. Washington & Canonsburg Ry. Co., 25 Pa. Superior Ct. 564; Rhawn Township v. Tamaqua and Lansford St. Ry. Co., 167 Pa. 84; Penna. R. R. Co. v. Greensburg, Jeannette & Pittsburgh St. Ry. Co., 176 Pa. 559; Penna. Co. & Pittsburgh, Va. & Charleston Ry. Co. v. Glenwood & Dravosburg Elec. St. Ry. Co. & Second Ave. Traction Co., 184 Pa. 227; Pittsburgh Junction R. R. Co. v. Fort Pitt St. Passenger Ry. Co., 192 Pa. 45.

The defendant's action before the Public Service Commission precludes it from objecting now to the relocation of the line: Heilman v. Lebanon & Annville St. Ry. Co., 175 Pa. 188; Penna. R. R. Co. & Pittsburgh, Va. & Charleston Ry. Co. v. Glenwood & Dravosburg Electric St. Ry. Co. & Second Ave. Traction Co., 184 Pa. 227; Maust v. Penna. & Md. St. Ry. Co., 219 Pa. 568.

OPINION BY MR. JUSTICE WALLING, May 22, 1917:

This bill was filed to restrain defendant from relocating its railway in plaintiff township.

The Easton, Palmer and Bethlehem Street Railway Company (now merged in the defendant company) was chartered in 1897, and in 1898 constructed and has since operated a street railway extending westerly from Easton through the adjoining township of Palmer and thence to Bethlehem. The township gave its written consent providing, inter alia, that the railway company, "may construct and maintain its railway upon private land and private rights of way along such portions of its charter route and along such portions of its extended changed and modified route where said railway company may deem it necessary and convenient to avoid sharp curves, steep grades, irregularities of surface, dangerous construction, dangerous crossings or damage to private property." At the place here in question the railway was constructed on private property, along and immediately adjoining a public road, and intersecting the Easton and Northern Railroad by an over-grade

crossing.  In 1913, that part of the township adjoining
the city and extending west to the east line of a public
highway, known as the "Glendon Road," was duly con-
stituted a township of the first class, under the name of
"Wilson Township."  The railway as originally con-
structed was circuitous and the over-grade crossing un-
sightly and deemed unsafe.  In 1914 defendant, to
shorten and improve its line, took steps to reconstruct
the same for a distance of about forty-five hundred feet,
on a new right of way over private property and to the
north of its former location, a part of the new right of
way being in Wilson Township, but not there extending
over or upon any public road; and to be so reconstructed
as to cross the railroad by a subway or under-grade
crossing, located four hundred and forty feet north of the
old over-grade crossing.  This improvement would be a
great advantage to the defendant and the public, and to
secure the same defendant sought and obtained from the
Public Service Commission a certificate of public con-
venience, permitting the under-grade crossing, which is
intended to carry the railroad over the Glendon Road
and the street car tracks at the same point, the eastern
approach of the latter being in Wilson Township.  Be-
fore granting the certificate, the commission gave a full
hearing to the parties in interest, at which plaintiff ap-
peared and joined with all present in a stipulation stat-
ing, in effect, that it was desirable that the present over-
grade crossing should be abolished, and that the proper
point of crossing the railroad track was the place men-
tioned in the petition of the street railway company as
above stated, and that the only question in controversy
was the method of the proposed eastern approach.  No
appeal was taken from the order of the commission,
made May 4, 1916, granting the certificate; and defend-
ant relying thereon expended over forty thousand dol-
lars in the purchase of right of way and for material and
work on said improvement, of which plaintiff had knowl-
edge and made no objection until the filing of this bill,

August 17, 1916; and therein for the first time alleged that its consent for defendant's improvement had not been granted. The court below awarded a preliminary injunction, but after a full hearing entered a decree dissolving the same, from which this appeal was taken. The opinion of the chancellor embraces requests of the respective parties for findings of law and facts, and answers thereto, and also his independent findings and discussion, and in substance treats the case as on final hearing. His conclusion was that plaintiff had waived its right to successfully interpose the objection that the township had not formally given its consent to the relocation of the street railway. We agree with that conclusion. Plaintiff deliberately stipulated before the Public Service Commission that its only objection to defendant's change of location was as to the method of constructing the eastern approach to the new subway. In that entire proceeding nothing was said about lack of municipal consent; and thereafter defendant was permitted to incur large expenditures on the faith of its right to make the improvement; now plaintiff's belated attempt to prevent the completion of the work, to the damage of the defendant and the public, comes too late. The consent of a township is necessary to the construction of a street railway therein and was here given about twenty years ago. We deem it unnecessary to decide whether that consent would justify such a deviation from the original location as is now in question, for in our opinion plaintiff's laches and the position taken before the Public Service Commission constitute such an implied assent to the new location as precludes the township from obtaining the aid of a court of equity to prevent it. In 16 Am. and Eng. Ency. of Law (2d Ed.), p. 356, the rule is stated thus:

"A suitor who by laches has made it impossible for a court to enjoin his adversary without inflicting great injury upon him will be left to pursue his ordinary legal remedy. This rule is especially applicable where the

object of the injunction is to restrain the completion or use of public works, and where the granting of the injunction would operate injuriously to the public as well as to the party against whom the injunction is sought." This is quoted with approval by present Chief Justice BROWN in delivering the opinion of this court in Stewart Wire Company v. Lehigh Coal & Navigation Company, 203 Pa. 474, 478. Township officers, who have knowingly and without objection permitted a street railway to be constructed in their municipality, cannot compel its removal: Penna. R. R. Co. v. Montgomery County Pass. Ry., 167 Pa. 62; Maust v. Penna. & Maryland Street Ry. Co., 219 Pa. 568. Plaintiff, at the hearing before the Public Service Commission, having conceded the propriety of defendant's change of location and stipulated that the only question was as to the method of construction of the approach to the subway, cannot in this proceeding set up its own alleged lack of consent to such change, especially after defendant has acted upon the faith of the position taken by plaintiff before the commission. One who has assumed a position in a legal proceeding, which has been acted upon by the opposing party, may not thereafter in another proceeding assume a different position to the prejudice of such party: Clear Springs Water Co. v. Catasauqua Borough, 231 Pa. 290; Thomas v. Heger, 174 Pa. 345. We have followed the court below in considering this case as on final hearing; however, it would have been better practice had counsel filed with the chancellor a stipulation to that effect, so that a decree nisi might have been entered and the case disposed of by the court in banc.

The assignments of error are overruled and the decree is affirmed at the costs of appellant.