# STATE OF NORTH DAKOTA EX REL. WILLIAM LEMKE, Respondent, v. UNION LIGHT, HEAT, & POWER COMPANY, a Corporation, Appellant.

## and

# CITY OF GRAND FORKS, a Municipal Corporation, M. F. Murphy, R. B. Griffith, N. G. Benner, and All Users of Electricity, Heat, or Gas Furnished by Defendant, Respondents, v. RED RIVER POWER COMPANY, a Corporation, Appellant.

(Two Cases)

(182 N. W. 539.)

**Public service commissions — injunction against surcharging public utilities rates and subsequently permitting such surcharges to be collected held within discretion of trial court.**

In two actions brought to enjoin defendant utility companies from putting into effect certain surcharges upon their rates for electricity, gas, and heat, which surcharges purport to be authorized by orders of the board of railroad commissioners, the complaints attack the validity of the orders of the commissioners on the ground that the purported orders reflect the individual action of two members of the board rather than the action of the commission as a body. The pleadings frame issues of fact concerning the manner in which the action resulting in the purported orders was taken. Upon orders to show cause the trial court granted injunctions against the surcharges, but subsequently superseded the injunctions and allowed defendants to collect the surcharges, requiring them to give bonds conditioned for repayment in case the injunctional orders be held on appeal to have been wrongfully issued. It is *held:*

1. The action of the trial court, both in granting the injunctions *pendente lite* and in subsequently permitting the surcharges to be collected, involved the exercise of discretion, and created a status for the parties to the litigation which will not be disturbed on appeal unless the discretion was abused.

**Public service commissions — railroad commissioners can act only as a board, and each member must be given reasonable opportunity to attend.**

2. The board of railroad commissioners is a public body and can only act as a board. While the questions before it may be decided by a majority vote (Comp. Laws 1913, § 601), it is a prerequisite to valid board action that each member shall have reasonable opportunity to offer his counsel and judgment to the other members, and to this end it is required either that action be taken at regular meetings or at a meeting of which each member is advised and given reasonable opportunity to attend.

**Appeal and error — public utility companies by giving security for repayment may be allowed to collect surcharges pending appeal.**

   3. Since the action of the district judges in superseding the injunctions *pendente lite* has created a status which, in view of the uncertainty of the outcome of the trials on the merits, should not be disturbed, the defendants are given an opportunity to continue the status so created by giving security for the repayment of surcharges pending the determination of the litigation, in default of which the orders appealed from are affirmed.

Opinion filed March 21, 1921.

Appeals from orders of the District Courts of Cass and Grand Forks Counties, *Cooley, Cole,* and *Englert,* Judges.

Remanded with directions.

*Bangs, Hamilton & Bangs,* and *Denegre, McDermott, Stearns & Weeks (Cummings, Roemer & Flynn,* and *Andrew Miller* of counsel), for defendant and appellant Red River Power Co.

"The presumption is that public officials do as the law and their duty require them" (20 N. D. 398), and the order of September 2, 1920, being regular on its face, "it is presumed that the board did everything which the statute in question required it to do, before it made the order" (20 N. D. 398). (Greenfield School Dist. v. Hannaford, 20 N. D. 393, 398, and cases there cited; Commissioners v. Hall, 70 Ind. 469; 16 Cyc. 1076), including calling and holding of meeting (Merchant v. North, 10 Ohio St. 252; Schuerman v. Arizona, 184 U. S. 342, 46 L. ed. 580, 585.)

The law nowhere provides for the calling or holding of any regular or special meetings of the board at which the matters pending before it shall be discussed and at which its decision shall be rendered." Comp. Laws 1913, § 584, repealed by § 55, chap. 192, Laws 1919; Laws 1919, § 31.

"Proceeding" in its general acceptation, and as used in § 24, chap. 192, Sess. Laws 1919, means "the form in which actions are to be brought and defended, . . . the manner of conducting them, the mode of deciding them . . . and of executing." (Erwin v. United States, 37 Fed. 488, citing Bouv. Law Dict.) and include all possible steps in an action, from its commencement to the execution of judgment. Ex parte McGee (Or.) 54 Pac. 1092.

"Anything done from the commencement to the termination is a proceeding." Sherman v. So. P. Co. 31 N. W. 285, 102 Pac. 259; 6 Words & Phrases—First Series; 3 Words & Phrases—Second Series.

A vote as contemplated by § 601, Comp. Laws 1913, is any act by which the expression or choice of a commissioner in regard to any question before the board for decision is made known or communicated to the other members of the board. 40 Cyc. 224; Worcester Dict. Maynard v. Kent Co. (Mich.) 47 N. W. 759; State v. Blaisdell, 18 N. D. 36.

*William Lemke,* Attorney General, and *W. J. Mayer,* for plaintiffs and respondents.

*G. S. Wooledge,* City Attorney, for city of Minot.

*Denegre, McDermott, Stearns, & Weeks,* and *A. W. Fowler* (*Andrew Miller* and *Cummins, Roemer & Flynn,* of counsel) for appellant Union Light, Heat, & Power Company.

When the method of exercising the powers conferred upon the board is not specially described by charter or by general law, the board may exercise the power in any appropriate method. 28 Cyc. 322, and cases cited; State v. C. & N. W. R. Co. (N. D.) 179 N. W. 378.

"In all collateral actions or proceedings, the orders and decisions of the commission which have become final shall be conclusive." Comp. Laws 1913, § 4741; Laws 1919, chap. 192, § 31.

BIRDZELL, J. The above cases come to this court on appeals from orders entered in each of them granting an injunction *pendente lite.* The injunction prevents each of the defendants from putting into effect and collecting certain surcharges upon its rates for electricity, gas, and heat, which surcharges purport to be authorized by an order of the board of railroad commissioners. Pending this appeal, however, the injunctional order is stayed. The trial judges have required the defendants to execute bonds conditioned, among other things, for the refunding of the surcharges, and have permitted the surcharges to be collected by the defendants pending the appeal. The facts upon which the orders appealed from are based are substantially identical for both cases, and the two appeals may thus be disposed of under one opinion.

Upon the argument the city of Minot was represented by its city attorney, who stated that that city was likewise interested in the ques-

tions presented here, as a stipulation had been entered into with a view to avoiding the necessity of litigating the same questions, as they affect that city in its relations with the utility company supplying similar services to its inhabitants.

These proceedings originated by complaints praying that the defendants be enjoined and restrained from charging increased rates for electricity, gas, and heat. In the complaint in the Fargo case it is alleged that the defendant Union Light, Heat, & Power Company has unlawfully, and without authority, increased its rates on electricity and gas 25 per cent and on heat 35 per cent; that it bases the increases complained of upon a purported order of the board of railroad commissioners dated September 2, 1920; that the purported order is illegal for the reason that it was never adopted by a majority of the board at any special or regular session of the board; that it was signed by two of the commissioners, Sam Aandahl and C. F. Dupuis, in their private and individual capacity, and not as members of the board of railroad commissioners; that the minutes of the board show that the case involving the increase was never considered by the board, nor the increased rates adopted or passed in any regular or special meeting; that the fact was there had never been a hearing in regard to the proposed increases in rates in which the city of Fargo and the inhabitants were given a fair opportunity to be heard and protect their interests as provided by law. In the Grand Forks case the surcharge on electricity which the board purported to authorize is 12½ per cent, for gas 25 per cent and for heat 35 per cent. It is not alleged in this case that there was not ample notice and opportunity for a hearing.

The answers set up the legal conclusion of regularity and validity, and deny the allegations of fact in the complaint with reference to the manner in which the order was promulgated.

In the Grand Forks case there was a temporary restraining order, dated November 9th, preventing the collecting of the surcharge until the further order of the court. This was later vacated. In each case there was an order to show cause why a temporary restraining order should not be issued. Both cases came on for hearing upon the orders to show cause, in the city of Grand Forks on November 26, 1920, and were heard before the district judges of the first district sitting together. Under the opinion and order of the lower court the defend-

ants are restrained from collecting any sums in excess of the rates in force prior to September 2, 1920, the opinion being based upon the proposition that the members of the board, in purporting to authorize the surcharges, acted individually, and not as the board of railroad commissioners.

But this court order is not in effect pending this appeal, and the surcharges complained of are apparently being collected. The facts concerning the manner in which the hearing was held in the board of railroad commissioners and the purported order issued, as shown by affidavits accompanying the complaints, are as follows:

In the affidavit of Frank Milhollan, one of the members of the board of railroad commissioners, it is stated that after the hearing the deponent requested the director of utilities of the railroad commission not to prepare a tentative opinion in the case until investigation could be made as to why the city of Fargo was not represented at the hearing; that shortly thereafter a tentative report, opinion, and order were shown him by Commissioner Dupuis, which had been signed by Commissioners Aandahl and Dupuis; that deponent protested against the releasing of any order, because of a letter received by the commission from a large consumer at Fargo and a resolution passed by the city commission of Fargo, protesting against the increased rates until further hearing; and that affiant informed Commission Dupuis that if such an order were released he would submit a dissenting opinion. The most important part of the affidavit reads:

"That prior or subsequent to September 2, 1920, nor at any other time has the matter of disposition of the case been formally brought before the commission for a decision.

"That at no time has deponent had an opportunity to express at a regular or special meeting of the board of railroad commissioners, his views in connection with this matter, nor has he at any such meeting been given an opportunity to enter into a discussion of, or vote upon, this matter."

Following this the deponent states that he has been present at all meetings of the board held since August 16, 1920, and that of his own knowledge no formal action has been taken by the commission in disposition of this matter.

The affidavit of J. H. Calderhead, secretary of the board of rail-

road commissioners, states that on September 2, 1920, the purported order was placed before him for signature and for affixing the seal of the commission; that the purported report and order had been signed by Commissioners Aandahl and Dupuis, and annexed thereto was a dissenting opinion, signed by Commissioner Milhollan; that the purported report and order were duly signed and sealed by deponent, with full knowledge that no formal action had been taken at any regular or special meeting of the board of railroad commissioners; that deponent had been present and kept the minutes of all meetings of the board of railroad commissioners, and that the matter had never been discussed or acted upon at any meeting of the board.

The order, to which was attached the signature of the board of railroad commissioners by Commissioners Aandahl and Dupuis, contained an affirmative showing in support of its regularity as follows:

"This matter being at issue upon the application of the Union Light, Heat, & Power Company of Fargo, North Dakota, for an increase in its rates for the utility services of electricity, gas, and steam heat to be levied as a surcharge to the present existing rates in order to meet an emergency situation due to the increased costs in coal, *and having been duly heard by this commission, and full consideration having been given to all the matters and things contained in the said application,* and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereof, which said report is hereby approved and made a part hereof—now, after due deliberation by the commission, it is ordered," etc.

The minutes of the meeting for August 16, 1920, when the hearing was held, which are attached to and made a part of the affidavit of J. H. Calderhead, secretary of the board, state that there were present at the meeting Vice President Dupuis and Commissioner Milhollan, Commissioner Aandahl apparently being absent.

The cases have not been tried on their merits, and consequently no question is presented upon this appeal concerning the right to the permanent relief prayed for. It will, however, be necessary to consider the principles upon which the validity of the action of the board of railroad commissioners depends, for the reason that there is no right to temporary relief unless facts are alleged which constitute grounds for permanent relief.

It is to be seen from the foregoing statement of facts that the purported order complained of was not issued by a majority of the board of railroad commissioners participating in the hearing at the date the hearing was held. Also that it was signed by one member who heard the evidence and one member who apparently did not hear it. From these facts the respondent contends that it is apparent no valid order of the railroad commission authorizing the surcharges was ever made. In support of this contention various sections of the statutes relating to the Constitution, organization, and method of transacting the business intrusted to the board, are cited, from all of which it appears, it is contended, that the individual members of the board are not authorized to take action upon such matters as that under consideration, and that valid action can only be taken by the board as such. While it is conceded that a hearing may be conducted, in pursuance of statutory authorization, by one or more members of the board, it is contended that the statutes nowhere authorize action such as that taken in the instant case in any manner except by the board. Though the statute (Comp. Laws 1913, § 601) expressly authorizes all questions to be decided to be determined by a majority vote of the commissioners, it is nevertheless argued from the various sections of chapter 192, Session Laws of 1919, that the commission must first be convened in some sort of meeting where opportunity will be afforded for an exchange of views before a majority may bind the board by its action. It is contended, in brief, that the purported order is void for the reason that it is not shown to have been passed at a regular or special meeting of the board of railroad commissioners by a majority vote of those present.

On the other hand, the appellants contend that the entire proceedings from the date of the filing of the petition up to and including the filing of the written findings, decision, and order, are fair and regular, and purport to be and were clearly intended to be the action of the commission; that the laws governing the commission do not expressly or by implication require that its decision be arrived at in the manner contended for by the respondent. It is pointed out in this connection that even Commissioner Milhollan treated the order as the action of the commission, dissenting therefrom because he thought there should be an additional hearing. It is argued that the

whole action of the members of the board is such as to show that they did not purport to act as individuals, but as members of the board of railroad commissioners. In support of their principal contention the appellants point out that the statutes nowhere provide for the calling or holding of any regular or special meetings at which the matters pending before it shall be discussed and its decisions arrived at. It is shown that § 584, Comp. Laws 1913, which provided for five regular sessions to be held annually at certain named places, was expressly repealed by § 55 of chapter 192, Session Laws of 1919, and that, aside from § 585, which provides for the calling of special sessions by the president of the commission or the governor on ten days' notice, there is no statute governing the meeting of the board.

The Public Utilities Act (Sess. Laws 1919, chap. 192) § 54 expressly provides that it is to be construed and interpreted with all other statutes of the state having for their purpose the regulation of public utilities, and that it is intended to be supplemental to such statutes. It is unnecessary to deal in detail with the various statutes which have to do with the manner in which the board of railroad commissioners is required to transact its business. Suffice it to say that all of them treat it as a public entity comprised of members who must act jointly as a board, and not severally as so many individuals; that the board must make certain records of its proceedings, and that the votes of the members shall be recorded, though the manner in which their votes may be evidenced is not specifically covered.

From the arguments advanced by the respective parties, it seems that the essence of the opposing contentions centers about the answers to the query: Under the statutes of this state, is the board of railroad commissioners a public body composed of a number of individuals who can only bind the body when assembled for the purpose of taking action? In short, does the rule which is concededly applicable to all such organizations as city councils, boards of county commissioners, and school boards apply to the deliberations of the board of railroad commissioners?

Upon a careful examination of the statutes bearing upon the question and of the rather numerous authorities cited by counsel, we are of the opinion that this question must be answered in the affirmative. We can see no distinction in principle, between the action of the board

of railroad commissioners within the range of subjects committed to it and the action of the various bodies to which the rule clearly applies. In one of the leading cases on the subject, namely, Paola & F. River R. Co. v. Anderson County, 16 Kan. 302, the reason for the rule is stated so aptly in the opinion by Mr. Justice Brewer that it is in effect an argument demonstrating its application to such a board as that in question. After discussing earlier authorities, both English and American, Justice Brewer states (page 309) :

"Nor is this merely an arbitrary rule, but one founded upon the clearest dictates of reason. Wherever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. It may be that all will not concur in the conclusion; but the information and counsel of each may well affect and modify the final judgment of the body. Were the rule otherwise, it might often happen that the very one whose judgment should and would carry the most weight, either by reason of his greater knowledge and experience concerning the special matter, by his riper wisdom and better judgment, or by his greater familiarity with the wishes and necessities of those specially to be affected, or from any other reason, and who was both able and willing to attend, is through lack of notice an absentee. All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment, of each and all the members, is endangered by any other rule."

And Justice Selden, in People ex rel. Loew v. Batchelor, 22 N. Y. 128, has stated that "it is not only a plain dictate of reason, but a general rule of law, that no power or function intrusted to a body consisting of a number of persons can be legally exercised without notice to all the members composing such body."

When we consider that the board of railroad commissioners consists of members, each of whom is elected at large, supposedly on the basis of his qualifications for the duties imposed, and that the board is intrusted with an extensive authority, legislative in character, to determine rates at which public service corporations must serve the public and the public pay for such service, the requirement that its determinations shall only be made after opportunity is afforded to

every member to bring to bear upon his associates his counsel, opinion, and judgment upon all matters entering into the decision, is most reasonable and salutary. This safeguard operates for the protection of both parties to a controversy, and cannot properly be disregarded in arriving at the validity of action of such general importance and affecting so many persons. If orders issued or decisions rendered by two of a board of three members are allowed to stand where no opportunity to participate in the steps leading up to the decision is afforded to the third member, the latter could be rendered entirely useless, and the public be effectually deprived of the service of one in whose judgment upon such matters it had expressed confidence. For other authorities supporting this general doctrine, see Zottman ex rel. Anderson v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96; People v. Coghill, 47 Cal. 361; Schwanbeck v. People, 15 Colo. 64, 24 Pac. 575; Herrington v. Liston, 47 Iowa, 11; Aikman v. School Dist. 27 Kan. 129; First Nat. Bank v. Drake, 35 Kan. 564, 57 Am. Rep. 193, 11 Pac. 445; Thompson v. West, 59 Neb. 677, 49 L.R.A. 337, 82 N. W. 13; Day v. Jersey City, 19 N. J. Eq. 412; Schumm v. Seymour, 24 N. J. Eq. 143; Downing v. Rugar, 21 Wend. 178, 34 Am. Dec. 223; Crocker v. Crane, 21 Wend. 211, 34 Am. Dec. 228; State ex rel. School Dist. v. Tucker, 39 N. D. 106, 166 N. W. 820; State ex rel. Lemke v. Chicago & N. W. R. Co. 46 N. D. 313, 179 N. W. 378; School Dist. v. Shelton, 26 Okla. 229, 109 Pac. 67; Murphy v. Albina, 22 Or. 106, 29 Am. St. Rep. 578, 29 Pac. 353; Nason v. Erie County, 126 Pa. 445, 17 Atl. 616; Pennsylvania R. Co. v. Montgomery County Pass. R. Co. 167 Pa. 62, 27 L.R.A. 766, 46 Am. St. Rep. 659, 31 Atl. 468; First Nat. Bank v. Mt. Tabor, 52 Vt. 87, 36 Am. Rep. 734; McNolty v. School Directors, 102 Wis. 261, 78 N. W. 439.

Upon the argument appellants' counsel relied upon the recent case of Hackley-Phelps-Bonnell Co. v. Industrial Commission, 173 Wis. 128, 179 N. W. 590, as an authority holding that the record of a public body could not be impeached by a showing that the action was in fact not the action of the body (the industrial commission) but of an employee (an examiner). We do not understand the holding in this case to be as contended for. It was held merely that the allegations of the complaint and assertions in the brief, based on information, were not a sufficient impeachment of the record of the industrial com-

mission. The court clearly intimated that the record could be impeached by proper allegations and proof, for it said (p. 592):

"It would be indeed surprising if a party had no opportunity to show, if such be the fact, that a document in the record purporting to be the findings, and award of the commission was in fact not the act of the commission."

In the case at bar there is an issue of fact joined in the pleadings, as to whether the action is the action of the board, and there is no presumption of regularity or validity that precludes a full trial of that issue.

The above holding is not to be construed as requiring any particular formalities with reference to a notice of any meeting that might have been called for the purpose of deciding the controversy in question, for obviously any notice that gave the members of the commission a reasonable opportunity to be present would be sufficient. Nor is it to be construed as requiring the vote to be manifested and recorded in some formal way other than that which might be indicated by the signing and filing of a decision, opinion, and order, or by dissenting therefrom. Inasmuch as the validity of the order of the board of railroad commissioners is yet to be determined as a finality upon such proof as may be offered in a trial on the merits, further discussion of the matter at this time will serve no useful purpose.

This brings us to a consideration of the orders appealed from. They grant injunctions *pendente lite*. Whether or not they should have been issued depends upon the balance of inconvenience entailed thereby as it appeared to the court at the time.

"If," says High on Injunctions, "upon the application for a preliminary injunction, it is doubtful what may be ascertained to be the real facts of the case upon final hearing and if the rights of the plaintiff will suffer no serious injury if not enforced until such hearing, the court may, in the exercise of a sound discretion, refuse the injunction *in limine*. If, however, the danger threatened is of such a nature that it cannot easily be remedied in case of a refusal of relief, and the answer does not deny that the act charged is contemplated, a preliminary injunction should be allowed unless the equities of the bill are satisfactorily refuted by the defendant." 1 High, Inj. 4th ed. p. 17, § 11.

The balance of inconvenience is determined by the consideration as

to whether, pending the litigation, greater danger of irreparable injury to one or the other of the parties is likely to result from granting, than from withholding, the relief.

In the instant cases the defendants threatened to apply a surcharge, and thus to change the relations with their patrons to the apparent prejudice of the latter. These facts, coupled with the doubt as to the validity of the surcharge, apparently led the trial judges, in the first instance, to determine the balance of inconvenience in favor of the plaintiffs; that, is, it seems to have been thought that the defendants were apt to suffer less inconvenience from granting the temporary relief than would the plaintiffs from withholding it. But almost immediately thereafter this determination was in effect reversed by the action of the trial judges in superseding their previous order by an order which would allow the defendants to collect the surcharge, supplying a bond conditioned for repayment in case of the reversal on appeal of the preliminary injunctional order. In this the trial judges exercised a discretionary power. Comp. Laws 1913, § 7832.

In view of the uncertainty as to the ultimate outcome of this litigation following a trial on the merits, we cannot say that the trial court, in either instance, abused its discretion. It is a well-known rule that where a temporary injunction is issued at the instance of plaintiffs, unless a bond is executed, those prejudiced thereby may not, in the absence of malice, recover damages even though it be subsequently determined that the injunction should not have issued. Such damages are regarded as *dammum absque injuria*. Minneapolis, St. P. & S. Ste. M. R. Co. v. Washburn Lignite Coal Co. 40 N. D. 69, 12 A.L.R. 744, 168 N. W. 684, affirmed in 254 U. S. 370, 65 L. ed. 310, 41 Sup. Ct. Rep. 140 (decided December 20, 1920); Russell v. Farley, 105 U. S. 433, 26 L. ed. 1063; Meyers v. Block, 120 U. S. 206, 211, 30 L. ed. 642, 643, 7 Sup. Ct. Rep. 525; Arkadelphia Mill. Co. v. St. Louis Southwestern R. Co. 249 U. S. 134, 145, 63 L. ed. 517, 524, P.U.R. 1919C, 710, 39 Sup. Ct. Rep. 237; Scheck v. Kelly, 95 Fed. 941; Hayden v. Keith, 32 Minn. 277, 278, 20 N. W. 195; St. Louis v. St. Louis Gaslight Co. 82 Mo. 349, 355; Lawton v. Green, 64 N. Y. 326; Palmer v. Foley, 71 N. Y. 106, 108. In recognition of this rule, our statute requires a written undertaking on the part of the plaintiff in certain instances. Comp. Laws 1913, § 7532.

. To have continued the temporary injunctions in these cases ·without security for damages being furnished by the plaintiffs might have thrown the entire burden incident to the uncertainty of the outcome upon the defendants; and they are in nowise chargeable with the alleged irregularities in the proceedings complained of. These considerations doubtless led the trial court to change the status of the parties through the supersedeas.

The power to require security for damages includes the power to require it as a condition of withholding injunction where the balance of inconvenience seems to warrant it. Kerr, on Injunctions, 5th ed. p. 28, says:

"In balancing the comparative convenience or inconvenience from granting or withholding an injunction, the court will take into consideration what means it has of putting the party who may be ultimately successful in the position he would have stood if his legal rights had not been interfered with. . . .

The court may often, by imposing terms on the one party, as a condition of *either granting or withholding the injunction,* secure the other party from damage in the event of his proving ultimately to have the legal right. . . . The defendant may be required to do such acts, or execute such works, or to remove any works, or otherwise deal with the same as the court shall direct; or to enter into an undertaking to refrain from doing in the meantime the acts complained of, or to abide by an order the court may make as to damages or otherwise, in the event of the legal right being determined in favor of the plaintiff."·

It has been held proper in an action to prevent an infringement of a copyright to permit the defendant to continue to sell the work, in the meantime undertaking to account according to the result of the action. Wilkins v. Aikin, 17 Ves. Jr. 422, 34 Eng. Reprint, 163,· 11 Revised Rep. 118.

The difficulty in preserving the rights of parties litigant pending a final decree, without visiting upon either more or less inconvenience, if not in fact some irreparable loss, is one that is frequently encountered in cases involving rates for public service. This difficulty, it appears, has generally found its most satisfactory solution in orders permitting the higher rates to be collected pending suit, particularly where their collection does not involve a real change of status, and

where there is a reasonable showing that such rates may be required as a fair measure of compensation.  Consolidated Gas Co. v. Mayer, 146 Fed. 150; Buffalo Gas Co. v. Buffalo, 156 Fed. 370; Re Arkansas R. Rates, 163 Fed. 141, 168 Fed. 720; Spring Valley Water Co. v. San Francisco, 165 Fed. 657.  In permitting the rates to be collected pending suit, however, the rights of the patrons are safeguarded by requiring the excess to be impounded, as will be seen in the foregoing cases. See also State ex rel. Lemke v. Chicago & N. W. R. Co. 46 N. D. 313, 179 N. W. 378.  The action of the district judges in these cases created exactly this status for the parties to the litigation.  In effect there is no injunction against the surcharges, and every reason that actuated the district judges in superseding the injunctions pending this appeal pertains with reference to the continuance of the status so created until the end of litigation.  If the district judges did not abuse their discretion in superseding the injunctions, this court should not reverse the effect of their action by reinstating them.

We deem it proper to observe in this connection that while the right to recover and collect the surcharges is dependent upon the order of the board of railroad commissioners, it does not appear in the records of that board, in so far as presented here, that the surcharge was not required to secure a fair return.  Neither does the record here disclose any individual opinion of the members of the board to the contrary.  This is a matter that may be entitled to no weight in deciding the merits of this controversy, but which may nevertheless properly be considered in reviewing the discretionary act of the district judges in permitting the surcharges to be collected during the pendency of this litigation to date.

A proper application of the foregoing principles to the cases at bar seems to us to require the continuance of the present status of the litigation pending the trial on the merits, rather than an affirmance of the order granting the injunction *pendente lite;* for to affirm would involve a breach of the supersedeas bond and give the plaintiffs an opportunity to reclaim the surcharges thus far collected, although it may later appear that the orders granting the surcharges were valid. The orders should be affirmed, however, unless the defendants are willing to give the requisite security for continuing the present status.

The judgment of this court is that the defendants be required to

furnish adequate bonds, the amount and sufficiency thereof to be determined by the district court, conditioned for the repayment of all surcharges heretofore and hereafter collected under the purported orders of the board of railroad commissioners, to continue until such time as the present suits are terminated upon their merits, in default of which the temporary injunctions shall be continued in force, and in all things affirmed for purposes of liability on the supersedeas bond. It is so ordered.

ROBINSON, Ch. J., and CHRISTIANSON and BRONSON, JJ., concur.

GRACE, J. (concurring in the result). As I view these cases, they are not presented here at this time upon their merits. Hence, all the discussion contained in the opinion, which refers to the merits, is *obiter dicta.*

I concur only in the result, but express no opinion upon the merits.