STATE OF NORTH DAKOTA EX REL. WM. LEMKE, Assistant Attorney General, Relator, v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Chicago, Milwaukee, & St. Paul Railway Company, Great Northern Railway Company, Midland Continental Railway Company, Minneapolis, St. Paul, & St. Ste. Marie Railway Company, Northern Pacific Railway Company, and Sam Aandahl, C. F. Dupuis, Frank Milhollan, as Board of Railroad Commissioners of State of North Dakota, Respondents.

(179 N. W. 378.)

Carriers — rate order of railroad commissioners held void for lack of proper board action, and carriers restrained from enforcing increases.

The Board of Railroad Commissioners, pursuant to an application by the carriers, conducted a hearing attended throughout by one member of the board and a part of the time by two members. Several days thereafter a meeting

of the board was held, at which the subject-matter of the application was discussed, but concerning which there was no vote taken on any matter presented in the application, although it is claimed an agreement as to disposition was reached. The minutes of the board do not show what action, if any, was taken. Subsequently, an order was issued under the seal of the board and signed by the secretary, disposing of the application, the secretary stating that such order was released pursuant to an understanding with one member of the board. It is *held:*

1. The purported order is void for lack of proper action by the Board of Railroad Commissioners, and the carriers are restrained from putting into effect rate increases based upon the purported order, and are required to refund increased charges which have been collected pursuant to such purported order.

Opinion filed September 17, 1920.

Original application for writ of injunction.
Writ granted.

Statement by BIRDZELL, J. This is an original application for an alternative writ of injunction restraining the respondent railway companies from continuing to charge rates and fares according to schedules filed under a purported order of the Board of Railroad Commissioners. Upon presentation of the application an order was issued out of this court, requiring the defendants to show cause why they should not be permanently enjoined from charging any increase in intrastate passenger or freight rates, and from further continuing to charge the alleged unlawful increase in intrastate freight and passenger rates put into effect by them on September 1, 1920. Pending the hearing and the further order of the court they were enjoined from charging such rates and fares so put into effect, unless the increased charges be kept separate and apart and be subject to the order of the court.

The petition alleges that on September 1, 1920, the respondent railway companies increased their passenger rates 20 per cent on intrastate commerce and their intrastate freight rates 35 per cent; that said increases are unjust, unreasonable, extortionate, and unlawful; that the increases were made pursuant to the authority of a purported order of the Railroad Commission issued August 24, 1920. The authority of the Railroad Commission to issue the order is denied, and it is further alleged that the same was never presented and adopted at a legal

meeting of a majority of the board; that in fact two of the three commissioners were opposed to the order and to the increased rates, and had never given their consent or approval to the same.

It is also alleged that there had never been a proper hearing before the commission at which the public and shippers were given a fair opportunity to protect their interests; that the levels of intrastate freight and passenger rates of North Dakota are higher than in Minnesota and South Dakota by 40 per cent and 28 per cent, respectively; that the intrastate freight rates are made for the purpose of giving advantage to milling, packing, and other industries in Minneapolis, St. Paul, and other large cities, and, because of unjust discriminations, are destructive to similar industries in this state. The petition avers "that the intrastate rates in force August 31, 1920, were just and reasonable, and not confiscatory, and permit a reasonable profit."

The prayer for relief asks that the defendants be restrained from continuing to charge the higher rates on intrastate traffic which were put in force on September 1st.

To the petition there is attached the affidavits of Frank Milhollan, a member of the Board of Railroad Commissioners, V. E. Smart, rate expert and statistician for the board, and a certified copy of the purported opinion and order complained of. The Milhollan affidavit states in substance that on August 21, 1920, there was a meeting of the Board of Railroad Commissioners, at which the question of increasing freight and passenger rates was discussed; that some notice of the hearing had been given sixteen days prior thereto, but it did not receive general publicity; that there were present at the hearing attorneys for the various railroads, but none representing the interests of the public and the shippers; that no final determination or decision of the matter was reached at this meeting nor at any subsequent meeting; that the affiant was not then, and is not now, satisfied that the railroads are entitled to the increase sought; that no opportunity was given the affiant to read the transcript or to consider the evidence submitted by the railroads as to the reasonableness of the increased rates; that there has been no subsequent meeting of the commissioners, and no legal meeting has been held at which the increases were authorized; that Commissioner C. F. Dupuis, on or about the 24th day of August, caused the secretary of the commission to issue the order granting the increases complained

of; that the rates were subsequently, on September 1, 1920, put into effect without authorization by the Board of Railroad Commissioners, and are contrary to the rates established by law; that neither affiant nor the chairman of the board, Sam Aandahl, ever saw the order until after it was issued; that neither of them signed it, and that, prior to the hearing above referred to, Commissioner Dupuis had held a meeting on August 12th and 13th, at which hearing, he, Dupuis, was the only commissioner present; that affiant is informed and believes that the railroads were represented at that meeting by their attorneys, and that four or five members of different shipping concerns were also present and protested against the increase. The affiant also swears to the disparity between the levels of the intrastate rates in North Dakota as compared with the rates in Minnesota and South Dakota, resulting in unjust discrimination prejudicial to the shipping interests of North Dakota and preferential to those of Minnesota and South Dakota as recited in the complaint.

The affidavit of the rate expert and statistician recites the meeting of August 12th and 13th, at which Commissioner Dupuis presided and at which the other two members of the Commission were not present, except Milhollan, who was there for two or three hours on the latter date; that the representatives of the railroads submitted evidence in support of their request for increased rates which did not convince the affiant of the necessity for the increase being applied to intrastate rates; that there was another meeting of the board on August 21st, at which meeting affiant was present the greater part of the time and at the conclusion thereof, and, so far as affiant knows, the board did not vote on the increase, and that affiant knows of no other meeting since. That during the forenoon of August 23d Mr. Dupuis directed affiant to prepare a tentative report, opinion, and order; that so far as affiant knows this report was never finally adopted at a legal meeting of the Board of Railroad Commissioners. This affidavit also supports the allegations of the complaint respecting disparity between the levels of the intrastate rates in North Dakota as compared with those of Minnesota and South Dakota.

The certified copy of the order identifies the matter pending before the commission as Case No. 1592, received May 18, 1920, heard August 12th and 13th, 1920, and decided August 24, 1920. It re-

cites as appearing for the commission, C. F. Dupuis, vice Chairman, Fred Bremier, director division of utilities, and V. E. Smart, rate expert and statistician. It further recites representation of the carriers by their attorneys and officials, giving the names, and other appearances on behalf of three commercial clubs of the state and the Employers' Association of North Dakota. It is unnecessary to refer at length to the matters recited in the order. Suffice it to say for purposes of this proceeding that the order purports to authorize the increases complained of, although it does not authorize all of the increases for which the carriers asked, such, for instance, as increases in rates on milk and cream and surcharges and sleeping and parlor car fares. It contains the further and concluding provision that the case shall be kept open, and further hearings ordered for the purpose of adjusting discriminations cited in the report and for inquiring into the reasonableness of individual class and commodity rates and passenger fares established by the order. The discriminations referred to are those resulting from the disparity between intrastate class and commodity rates applicable in North Dakota compared with those of adjoining states similar to North Dakota from a transportation standpoint, which the commission recognized and found to exist, further finding that there was urgent need of adjustments to remove the same.

At the hearing held in this court on September 10th, separate answers and returns were made by the carrier defendants and the Board of Railroad Commissioners. The answer of the carrier defendants, other than the Midland Continental Railroad Company, states in substance that the increased rates became effective September 1st, pursuant to the order of the Board of Railroad Commissioners. It alleges that in fact the order is the order of the board, and denies that it was never adopted at a legal meeting of a majority of the members; that two members of the commission are opposed to said order, and that two had never given their consent or approval thereto. It alleges the fact to be that the order was approved by all three members of the commission. It also contains allegations in support of the regularity of the hearing on August 12th and 13th, alleging that public notices had been given, which were published in the newspapers as well as sent to commercial organizations in the principal cities of the state. It denies that the intrastate rates of North Dakota are 40 per cent higher on the

average than those in Minnesota and 28 per cent higher than those in South Dakota. It admits that there are some rates in North Dakota which are higher than the rates on similar commodities in South Dakota and Minnesota, but alleges that it is their purpose to readjust all rates in the states through which they run, so that there shall be no difference in the levels of rates in the different states, except in those instances where there are circumstances or conditions which require different treatment. It recites and relies upon proceedings before the Interstate Commerce Commission in the case known as Ex Parte No. 74, wherein carriers were authorized to advance interstate freight rates 35 per cent and interstate passenger rates 20 per cent, alleging that said proceeding has been held open on the docket of the Interstate Commerce Commission for the purpose of adjusting irregularities in a manner similar to the continued pendency of this case before the state Board of Railroad Commissioners for similar adjustment. They allege that at the hearing on August 12th and 13th, the defendants made the showing required by § 10, chapter 194, Laws of North Dakota 1919, and chapter 192 of the same laws, pursuant to which the Railroad Commission had authority to authorize the increases. But it is further alleged that by virtue of the Act of Congress of February 28, 1920, known variously as the Transportation Act and the Esch-Cummins Law, and of action taken by the Federal government during the period of Federal control, the showing required by the North Dakota statutes last above referred to was not a necessary prerequisite to the exercise of jurisdiction by the board and to the granting of the increases requested.

The answer was accompanied by the affidavit of B. W. Scandrett, which recites the facts anterior to the hearing. From this affidavit it appears that at a conference between the affiant, Commissioners Dupuis and Milhollan, and Director Bremier, it was mutually agreed that the hearing should be held on August 12th; that on August 12th and 13th, the hearing was held, Commissioner Milhollan arriving on August 13th in time to hear part of the evidence and the arguments summing up the testimony.

The Board of Railroad Commissioners appear in this proceeding by the attorney general, and in their answer allege that the order is the lawful order of the board; that the same was in fact approved by all three of the commissioners. It alleges facts concerning notice of the

hearing, to the effect that on August 2, 1920, notices were given by mail to the commercial clubs in the principal cities of the state, to various shippers, and that copies of the notice were furnished two daily newspapers in the state,—one in Bismarck and one in Fargo,—which notice was published and commented upon in both papers. Accompanying the answer of the board are the affidavits of Commissioners Aandahl and Dupuis. In the affidavit of the former it is stated that he did not attend the meeting on August 12th and 13th, but that he did attend a meeting on August 21st, at which there were present all three commissioners; that, in addition to other business transacted at this meeting, the board considered the application of the railroads for increased rates, and that it was unanimously agreed by the members that the board would grant the carriers' application for 20 per cent increase in passenger rates and 35 per cent increase in freight rates, but would deny the application for 50 per cent surcharge on Pullman parlor-car rates and for advanced cream and milk rates pending the consideration of the application of the express companies for similar advances in their milk and cream rates. Also that V. E. Smart was authorized and directed by the board to prepare, under the supervision of Commissioner Dupuis, the formal report and order of the board in accordance with this decision. The affidavit of Commissioner Dupuis corroborates the affidavit of Aandahl in the matters above referred to.

Additional affidavits were filed on the return day which it will not be nece~ ~ry to review at any length. Suffice it to say that Commissioner Aandahl swears that, so for as he recollects, no motion was put and passed authorizing the increase, but that he agreed to the increase, and is certain that the entire commission agreed to it; that affiant did not see the order as drawn or altered, nor did he know that it was altered prior to its being issued; that since the order has been issued he has carefully read it and that it conforms to the decision; that affiant, in arriving at his conclusion, believed that under the Esch-Cummins Act he could do nothing else than authorize the increase; that affiant did not read the transcript or other evidence submitted by the railroads and their attorneys.

The secretary of the board, J. H. Calderhead, certifies to the minutes of the meeting on August 21st. These minutes contain no reference to the application for increased rates further than the following state-

ment: "The secretary was directed to ask an opinion of the attorney general as to the jurisdiction of the board over the passenger fares in this state." In his affidavit, however, the secretary states that the matter of increased railroad rates was in fact discussed at the meeting of August 21st, but that no regular action was taken upon the matter, and that no meeting has been held since August 21st. In this affidavit the facts are stated relating to the issuance of the order in question as follows:

"That on August 24, 1920, an opinion, report, and order in the matter of application for increased passenger fares and freight rates was placed upon my desk for signature and seal, and that the same was. signed and sealed with a full knowledge of the fact that no action had been taken formally by the Board of Railroad Commissioners, in the adoption of said report and order, but upon an understanding from Commissioner Dupuis that same should be released."

The return of the Midland Continental Railway Company states that it has not filed schedules of increases in its freight and passenger rates as alleged, and it is not interested in the subject-matter of litigation, and it asks that the action be dismissed as to it.

*Wm. Lemke,* Special Assistant Attorney General, for State of North Dakota.

*Wm. Langer,* Attorney General, and *F. E. Packard,* Assistant Attorney General, for Board of Railroad Commissioners.

*C. W. Bunn, M. L. Countryman, A. H. Lossow, D. F. Lyons,* and *B. W. Scandrett,* for defendants Chicago & Northwestern Railway Company, Chicago, Milwaukee, & St. Paul Railway Company, Great Northern Railway Company, Minneapolis, St. Paul & St. Ste. Marie Railway Company, and Northern Pacific Railway Company.

*G. M. Springer,* for Midland Continental Railway Company.

BIRDZELL, J. We have set forth the facts as stated in the affidavits somewhat fully for the reason that they have a direct bearing upon the validity of the order complained of. It was conceded upon the argument that this is the decisive question in the case. Was there, or was there not, an order of the Board of Railroad Commissioners authorizing the increases complained of? In our view of the case the

validity of the purported order does not depend upon the existence of any facts that might be more or less controverted in the affidavits referred to in the foregoing statement. It seems, on the contrary, that the invalidity of the order is established by the facts concerning which there is a general agreement in all the affidavits.

It is elementary that the Board of Railroad Commissioners possesses only the authority conferred upon it by the constitution and the statutes of the state. Railroad Comrs. v. Oregon R. & Nav. Co. 17 Or. 65, 2 L.R.A. 195, 19 Pac. 702. Its action, therefore, concerning any subject-matter within its jurisdiction, to be valid, must be in substantial conformity with the statutes governing its procedure and must be consonant with due process of law. Washington ex rel. Oregon R. & Nav. Co. v. Fairchild, 224 U. S. 510, 56 L. ed. 863, 32 Sup. Ct. Rep. 535; Beale & W. Railroad Rate Regulation, § 1142. Testing the action of the board in this instance by these simple, yet fundamental, requirements, we are forced to the conclusion that the order in question is void. A brief statement of the reasons leading to this conclusion should demonstrate its correctness.

The Board of Railroad Commissioners is a governmental body whose members are elected at large by the people. The governmental authority vested in the board combines administrative, legislative, and judicial functions. Within its range, therefore, the board exercises authority of the same kind as that vested separately in the three main departments of the government. It differs only in extent and finality. The statutes governing its procedure bear unmistakable evidence of intention on the part of the legislature to make its action effective upon the subjects committed to it and to clothe its regular action with presumptions of validity. To this end the board is charged with the duty of giving ample opportunity to interested parties to be heard before action is taken. It is required to preserve and transcribe the evidence upon which it acts. Sess. Laws 1919, § 42, chap. 192. See also §§ 4731 and 4741, Comp. Laws 1913. Its findings are likewise required to be filed (Sess. Laws 1919, §§ 42 and 43, chap. 192), and (Comp. Laws 1913, § 4741), and certified copies are made competent evidence in any proceeding, either before the commissioners or in any court, etc.

Appeals from its decisions are provided for. Sess. Laws 1919, §§ 34

46 N. D.—21.

and 35, chap. 192. It is inconceivable that upon an appeal from an order of the Board of Railroad Commissioners a court, in arriving at the substance of the matters agreed upon as findings or to be incorporated in an order or decision, should be compelled to extract them from the memory of officers and employees who might produce affidavits or give testimony to informal discussions during meetings of the board. The importance which the law attaches to the hearings, the findings, and the orders of this board, points unmistakably to the negation of any such procedure as this. If resort can be had to this method of arriving at the very substance of the matters agreed upon by the board, reasonable caution would suggest that such action should be deprived of any sort of presumption in its favor. Yet the statutes treating of the effect of decisions of the board are replete with provisions giving them presumptive validity, extending even, in some instances, to conclusive presumptions. Before any presumption could be indulged as to the correctness of the findings and conclusions, it ought at least to be requisite that there be the clearest possible evidence obtainable as to what the findings and conclusions are. Certainly no sort of presumption should arise in favor of a finding that can only be extracted from recollections of informal discussions. And even less should such findings be made a basis for an appeal. These statutes, as well as others which might be cited, render it clear that it was not within the contemplation of the legislature that the board of Railroad Commissioners could act upon any matter pending before it as so many individuals, and that the evidence of its action could be made to rest in the recollection of its members and employees.

A brief statement of the facts in the instant case, concerning which there is practically no dispute, will serve to point out wherein the purported action of the commission falls short of satisfying the above requirements. There is no minute record that any definite proposition involved in the application of the carriers was submitted to a vote of the commissioners and the vote taken thereon. There are no findings signed by a majority of the members. There is no order or decision signed by a majority of the members. The purported order was admittedly promulgated at the direction of one member of the board (whose good faith we have no occasion to impugn), acting, as he believed, under the most favorable view of the facts, in accordance with

the desire and consent of the other two members, such consent being apparently a matter of inference drawn from an informal discussion. Such does not, in our opinion, constitute action by the Board of Railroad Commissioners.

Upon the argument it was suggested that the record of the action of the board was established by evidence of a very satisfactory character; namely, the affidavits of those most familiar with the facts,—the officers themselves. But in our view of the matter it is not a question of verifying an official record. It is a question as to whether or not an official record has been made. We are of the opinion that the undisputed facts show that no official action has been taken on the matter pending before the Railroad Commission.

It follows, therefore, that the injunction should issue as prayed for, and that the excess rates and fares collected and held subject to the further order of this court should be distributed to the various patrons of the roads as they have contributed to the same. It is so ordered.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur.

ROBINSON, J. (concurring specially). In the opinion as written by Mr. Justice Birdzell I do concur. I do also concur with myself in commending railway managers to avoid the folly of the widow who killed the goose that laid for her the golden eggs. There must be some limit to the patience of the people who have no guaranty of 6 per cent, or even 1 per cent, and who do not clearly perceive the right or wisdom of robbing Peter to pay Paul. .

In this state the railway passenger rates and most of the freight rates are regulated and fixed by statute. Yet, during the war, when constitutions and statutes were practically suspended, and when railroads were taken over and operated by the government, special and excessive war rates were imposed and exacted by the government, and since the termination of the war and the restoration of the roads to their owners the railway carriers have, by sufferance, continued to exact the excessive war rates. In some way they have worked one or more of the railroad commissioners of the state, and have obtained a pretended order permitting them to add to the war rates for passengers, 20 per cent, and for freight, 35 per cent. However, it is entirely clear that

the railroad commissioners had no jurisdiction to make such an order. They cannot in any way vary or amend the laws of the state. Further, it appears that the pretended order of the commissioners was not made at a legal session of the board; it was not made upon proper notice, or any notice served upon the governor or the attorney general, nor after a fair hearing or any hearing. It was merely an arbitrary order, made in an arbitrary manner and without any jurisdiction, and for that reason it is null and void. Hence the carriers must be enjoined from continuing to exact, demand, or receive the excessive rates and charges in accordance with said void order, and all excess charges received must be refunded.

BRONSON, J. (specially concurring). I concur in the opinion of Justice Birdzell to the extent that it holds and determines that no order of the Board of Railway Commissioners was, in fact or in law, made.

I expressly disapprove of the statements made in the opinion of Justice Robinson concerning so-termed excessive war rates, the jurisdiction of the Railroad Commissioners, and the manner in which he states that the order involved was obtained. I am of the opinion that such discussion is not concerned in the consideration of the questions presented to this court in this action.

GRACE, J. (specially concurring). I agree with the conclusion of the opinion of the court, as written by Mr. Justice Birdzell, which holds, in effect, that the alleged order of the Board of Railroad Commissioners, under consideration in this proceeding, was not, in fact or in law, the order of that board, and that the pretended order is invalid and illegal, and of no force nor effect.

After hearing motion for modification.

Filed October 1, 1921.

BIRDZELL, J. The relator filed a motion in this court for a modification of the foregoing opinion and order. In response to the motion the cause was again set down for hearing upon phases not covered by the previous opinion, and a restraining order was issued which restrained the putting into effect of any rates, fares, or charges in excess of those

permitted by our former decision. The additional hearing having been had, we are of the opinion that the equities of the case require the disposition presently to be indicated.

This court assumed original jurisdiction under a petition setting forth various grounds upon which it was alleged that the order complained of was void, and that rates in excess of the legal rates were being put into effect contrary to law. In the decision of the matter it appeared to the court that the purported order was clearly void for the reasons stated in the opinion; and, owing to the probability that our opinion upon the other grounds alleged would be of no practical value, any further expression was deemed unnecessary. It now seems advisable, however, to express our views of the additional equitable considerations which must enter into the final disposition of the case in this court.

Complaint is made that there was not an adequate notice of the hearing before the Railroad Commission, and that, as a result, the public was not properly represented, and lacked opportunity to present the facts bearing upon the application from its standpoint. There is no statute requiring any other or different notice than such as was given in this case; and, from the general structure of the statutes regulating procedure before the Board of Railroad Commissioners, it is readily to be inferred that the board itself, as a public agency, is charged primarily with protecting the interests of the public. In view of the invalidity of the board's action, however, for the reasons already stated, and of the existence of other facts within equitable cognizance, it may be proper to order an additional hearing now, notwithstanding the sufficiency of the original notice.

In this instance, though it is apparent on the record that its decision upon the merits of the application would involve the determination of some close questions of law as well as of fact, it does not appear that the commission called to its aid the attorney general of the state, who is by statute made the legal adviser of the board. Aside from the representatives of three commercial clubs and an employers' association, there was no one in attendance representing the public as such. The sole representation of the public (with the exceptions heretofore noted) was by the one commissioner who presided at the hearings. The affidavits further show that at the time the original order was made one

commissioner, who had not attended the hearings, yielded his assent without having heard the evidence and without having read it, acting, apparently, on the supposition that the previous action of the Interstate Commerce Commission had made his duty merely perfunctory. This is not the character of consideration required by § 10 of chapter 194, Session Laws of 1919, and neither is the commissioner's supposition warranted either by the terms of the Transportation Act of the Congress of the United States or by anything known to us in connection with the application before the Interstate Commerce Commission for increases upon interstate traffic.

The present Public Utility Act attaches a greater degree of importance to the record made before the Board of Railroad Commissioners than any heretofore existing in this state. By § 43, chapter 192, Sess. Laws 1919, it is provided that the findings of the commission shall be admissible as evidence in proceedings before the commissioners or in any court, and that they shall be conclusive evidence of the facts therein stated as of the date and under the conditions then existing. By § 35 of the same chapter it is provided that upon appeal the lawfulness of the decision of the commissioners shall be inquired into and determined on the record of the commission as certified to by it, and that no new evidence shall be taken on such appeal or introduced by any party. The importance which thus attaches to the record made before the Board of Railroad Commissioners renders it imperative that full opportunity be accorded to all interests affected to make a complete showing before the board.

In North Dakota there is a peculiarity in the intrastate rate situation that perhaps is not present to complicate matters in any other state in the Union. A brief statement of this peculiarity will suffice for present purposes. Chapter 194, Sess. Laws 1919, was enacted for the avowed purpose of classifying freight and fixing maximum rates and charges. This law was enacted during the period of Federal control; and, by reason of such control and the Federal Transportation Act, it is conceded that it did not become applicable as a rate statute prior to September 1, 1920. It was stated on the argument that the rates therein prescribed and the classifications were substantially the same as the prewar rates in effect in our sister state of Minnesota. Also that the same differ materially, both in regard to rates and classifications, from

the schedules previously obtaining, and which were in force in North Dakota as the war rates. Section 10 of this act is the section which specifically authorizes the Board of Railroad Commissioners to permit carriers to charge higher rates than those prescribed in the law, provided they make the requisite showing before the commission.

It is apparent that the action of the commission in the instant case entirely ignores the general scheme of rates provided for in the law, and that it authorizes the increases based upon pre-existing schedules filed. To what extent this action subverts the policy of the statute (chap. 194) we are not prepared upon this record to say. But since, prima facie, the statute has been ignored, and the rates adjusted without reference to it, it has in effect been nullified. We cannot say now to what extent it might have been necessary to depart from the plan of this law in order to give to the carriers the relief which the statute itself contemplates. This can scarcely be determined in the absence of a record from which it will be possible to ascertain the relationship between interstate and intrastate rates, so that discrimination may be avoided. It is quite as serious a matter for an administrative board to contravene a fixed legislative policy with respect to a matter which is purely legislative, as it is for a court to invalidate legislation on constitutional grounds, and when a commission is acting under the broad powers given it to authorize compensatory rates above the maximum provided by statute, it should act upon a record that shows the necessity for such action, and we have no hesitancy in saying that it should, so far as possible, observe the declared legislative policy.

The fact that the new rate statute goes into effect following a period of Federal control, and at the expiration of the period fixed in the Transportation Act within which rates could not be lowered, may give rise to extreme difficulty. But this does not, in our judgment, justify either a court or a commission in assuming that the difficulties are insurmountable. On the contrary, it points to the necessity of a more complete showing before the commission than might otherwise be required.

Against the foregoing considerations the carriers urge that they have, in good faith, attempted to comply with the laws of North Dakota in making their application and substantiating it by the showing required; that they have been deprived for approximately thirty days

of the benefit of increased earnings from intrastate business to which the commission found them entitled; and that they should not suffer further hardship through delay. This court fully appreciates the situation from the standpoint of the carriers, but nevertheless, in view of the fact that approximately only one eleventh of their business in North Dakota is affected by this litigation, and the further fact that the war-rate schedules are not disturbed, we would hardly be justified in permitting the case to be closed before the Railroad Commission until there is the best assurance obtainable that a full record has been made upon which the legality of its final order can ultimately be determined. The short delay now required for this purpose, in our judgment, weighs less in the scale which determines the balance of inconvenience than would a present change in status which might ultimately be followed by new hearings, and in turn possibly by rescission of the earlier action with the attendant impossibility of reparation.

Without further expression concerning the merits of this controversy at present, and with no intention to indicate what action the commission should take when the record is completed before it, the further order of this court is that the Board of Railroad Commissioners be and is hereby required to open Case No. 1592 for further hearing; that the board publish notice of the time and place of hearing in accordance with § 585, Comp. Laws 1913, and mail a copy of such notice to the relator herein; that at such hearing the relator and all other interested parties be permitted to adduce evidence, examine witnesses, and submit depositions; and that all of the respondents herein be and they are hereby directed to co-operate to the end that a full hearing be had and a complete record thereof be made as required by law.

The writ and restraining order previously issued herein will remain in effect pending full compliance with the foregoing order and the final disposition of Case No. 1592 by the Board of Railroad Commissioners.

CHRISTIANSON, Ch. J., and BRONSON and ROBINSON, JJ., concur.

GRACE, J. (concurring specially). Relator having made and filed a motion in this court for modification of the original decision and order, a further hearing, upon elements of the case not considered in the

previous decision and restraining order, was, by this court, permitted and ordered.

The motion was fully argued by all parties, in which a further decision, covering additional points not incorporated in the original decision, has been written. Upon the petition originally presented to this court, it assumed original jurisdiction. It exercised its power under that jurisdiction, to declare the order of the Railroad Commission void, and the rates therein prescribed as excessive and contrary to law, and properly so.

The further decision of this court states: "The fact that the new rate statute (Sess. Laws 1919, chap. 194) goes into effect following a period of Federal control, and at the expiration of the period fixed in the Transportation Act, within which rates could not be lowered, may give rise to extreme difficulty. But this does not, in our judgment, justify either a court or a commission, in assuming that the difficulties are insurmountable. On the contrary, it points to the necessity of a more complete showing before the commission than might otherwise be required."

There are other expressions in the additional decision, expressing the same thought, principle, or conclusion, and with all this, we agree. It is the same principle stated, and the same conclusion arrived at by the writer in his dissenting opinion, in the case of State ex rel. Langer v. Northern P. R. Co. 43 N. D. 556, 172 N. W. 329, wherein it was stated: "At such time, when such transportation systems are returned to their owners, if they be so returned, all state regulations and powers will be again revived, and be of the same force and effect as they were at the time of the taking of Federal control.

"The power of the state at the time of taking of Federal control, to prescribe fares, rates, and charges was not repealed, but merely suspended during Federal control, and, upon the termination of that, will again have the same force and effect as at the time of taking of Federal control."

We there, further, fully discuss this principle, at length. Chapter 194 of the Sessions Laws of 1919 was a law of this state at the time the roads were released from Federal control, and became applicable as a rate statute on the 1st day of September, 1920, after Federal control had wholly ceased, and after it no longer had power to fix or pre-

scribe rates. Though that statute became applicable at the time above stated, it seems to have been ignored and disregarded by the commission, and thus, it disregarded the will of the legislature, as expressed in that law, and in effect nullified it.

We do not think the commission can disregard this law. We think it must be the basis of any action the commission may take, resulting in the issuing of its order fixing or prescribing rates. It is the source of their authority and power, relative to fixing rates. It will be time enough to discuss all the principles involved, and whether or not the commission may, in any degree, depart from that law, and upon what principle they may do so, if at all, when the full record is presented, if it ever is presented, from which it may be determined, upon a full consideration and analysis of interstate and intrastate rates, what, if any, power of action may be exercised or taken, by them, to avoid discrimination.

The further order of this court, requiring the Railroad Commission to open up the case for further hearing, and that the board publish notice of the time and place of hearing, and mail a copy thereof to the relator, and that all interested parties be permitted to adduce evidence, examine witnesses, and that the respondents be directed to cooperate in this regard, and that the restraining order previously issued remain in effect, pending full compliance with this order, and until the final disposition of the case by the Board of Commissioners, is in accord with my view.