Application of Carl M. HVIDSTEN, doing business as Hvidsten Transport, Grafton, North Dakota Transport, Inc., Moorhead, Minnesota, Dan Dugan, doing business as Dugan Oil and Transport Company, Sioux Falls, South Dakota; Lester A. Wilsey, doing business as Indianhead Truck Line, St. Paul, Minnesota; and all other persons similarly situated and adversely affected, relative to Special Certificate No. 175, praying for the setting aside of the Findings of Fact, Conclusions, and Order and the Amended Findings of Fact, Conclusions, and Order in Case No. S–874, and the Findings of Fact and Conclusions and Order in Case No. S–1142, and for a Cease and Desist Order thereunder.

Ernest D. NELSON, Elmer W. Cart, and E. H. Brant, as members of the Public Service Commission of the State of North Dakato, and E. G. Balsam, L. W. Balsam, S. F. De France, and V. L. De France, a partnership, doing business as Balsam & De France, Appellants,

v.

Carl M. HVIDSTEN, doing business as Hvidsten Transport; Transport, Inc., a corporation, Dan Dugan, doing business as Dugan Oil & Transport Company, Lester A. Wilsey, doing business as Indianhead Truck Line; Great Northern Railway Company, a corporation, Northern Pacific Railway Company, a corporation; Chicago, Milwaukee, St. Paul & Pacific Railroad Company, a corporation; and Minneapolis, St. Paul & Sault Ste. Marie Railroad Company, a corporation, Respondents.

No. 7387.

Supreme Court of North Dakota.

April 18, 1955.

Rehearing Denied Oct. 26, 1955.

Johnson & Rausch, Bismarck, for appellants Balsam & De France.

R. W. Wheeler, Commerce Counsel, Bismarck, for appellant Public Service Commission.

Alan Foss, Fargo, tor respondent Hvidsten Transport.

Clifford Jansonius, Bismarck, for respondent Transport, Inc.

John S. Whittlesey, Fargo, for respondent Dan Dugan Oil & Transport.

Myron H. Bright, Fargo, for respondent Indianhead Truck Line.

Herbert G. Nilles, Fargo, for respondents Great Northern Ry., Northern Pac. Ry., Chicago, M., St. P. & P. Ry. Co. and Minneapolis, St. P. & S. S. M. R. Co.

SATHRE, Judge.

The certified record on this appeal is lengthy, but the facts necessary to a determination of the issues presented are substantially as follows: On February 7, 1934 the Board of Railroad Commissioners (now Public Service Commission) of the State of North Dakota issued to the Northern Truck Line of Williston, North Dakota Special Certificate No. 175 authorizing the transportation of property in intra-state commerce in the vicinity of Williston, North Dakota. This certificate was issued under authority of Chapter 164 of the Session Laws of 1933. The proceedings in this matter was assigned Case No. S–240.

On March 18, 1946 the Public Service Commission, after notice and hearing approved a sale and transfer by Northern Truck Line of said Special Certificate No. 175 to Northern Transportation Company.

This matter was assigned Case No. S–874. Notice of hearing in this matter was sent to representatives of all North Dakota railroads, but none of the railroads appeared at the hearing. The commission made its findings of fact, conclusions and order as follows:

"That special certificate No. 175 authorized the transportation of general commodities in load lots of 5000 lbs. or more, from and within the territory described as follows:

"Bounded on the east by Williams, Mountrail, Divide, Burke County line; on the north by the International Boundary Line; on the west by the North Dakota-Montana State Line; on the south by the county road running east of Fairview, Montana, to a junction of U. S. Highway No. 85 and State Highway No. 23, except that the transportation of livestock, heavy set-up machinery, agricultural products of all kinds, sand, gravel, brick, tile and emigrant movables may be transported in both truck loads and in less than truck loads to and from a distance of 25 miles from Williston, the base of operation; and, further, that household goods may be transported to and from any place within the state in load lots of 3000 lbs or more."

Thereafter on May 24, 1946 upon request of the purchaser of said Certificate No. 175, Northern Transportation Company, the Commission issued amended findings of fact, conclusions and order in said case S–874, without further notice of hearing in the matter. This amended order describes special certificate No. 175 as follows:

"That Special Certificate No. 175 authorizes the transportation of general commodities in load lots of 5000 lbs., or more, from and within a territory described as follows:

"'Bounded on the east by the Williams-Mountrail-Divide-Burke County Lines; on the north by the International Boundary Line; on the west by the North Dakota-Montana State Line; on the south by a county road running east of Fairview, Montana, to a Jct. with U. S. Highway No. 85 and State Highway No. 23.'

except that livestock, heavy set-up machinery, household goods, emigrant movables and petroleum products in bulk may be transported between points and places within the State of North Dakota."

In November 1950 the Northern Transportation Company as seller and E. G. Balsam, L. W. Balsam, S. F. De France and V. L. De France, a partnership doing business as Balsam & De France, as buyers, made application to the Public Service Commission for authority by the Northern Transportation Company to sell and transfer to Balsam & De France said Special Certificate No. 175. Notice of hearing on this application was given to all of the railroads in the State and they appeared and protested the transfer of said Certificate to Balsam & De France.

Thereafter and on March 14, 1951 the Commission issued findings of fact, and conclusions, and made its order that said certificate No. 175 be reissued and transferred to Balsam & De France. The certificate thus reissued was in all respects identical with the certificate issued and transferred to the Northern Transporta-

tion Company under the amended order of May 1946.

No appeal was taken from this order by the railroads or by any other carriers.

On May 4, 1951 Hvidsten Transport, Transport Inc., Dugan Oil and Transport Co., and Indianhead Truck Line filed with the Commission a complaint alleging that the Public Service Commission by its amended order of May 24, 1946 in the matter of the sale of Special Certificate No. 175 by Northern Truck Line to Northern Transportation Company to Balsam & De France, unlawfully enlarged and extended the operating rights of said Northern Transportation Company under said Certificate in violation of Section 49–1810, 1949 Supp. NDRC 1943; that if the present assignees of said Special Certificate No. 175, Balsam & De France were permitted to operate to the extent that the authority of said Certificate had been unlawfully enlarged, such operation would result in irreparable harm, injury, damage to the applicants and to the general public.

Balsam & De France answered denying generally the allegations of the application.

The railroad respondents were permitted to intervene in this proceeding and joined in the application of the four motor carriers.

On January 29, 1952 the Commission issued its order dismissing the application of the said motor carriers. Thereafter the motor carriers and the railroads appealed from the decision of the Commission to the district court of Burleigh County. The matter was heard before the Hon. Geo. Thom Jr., District Judge, upon the certified record and transcript of proceedings had before the Public Service Commission.

The district court found as a fact that the original certificate No. 175 authorized freight service only in the vicinity of Williston and made conclusions of law that the authority to transport petroleum and petroleum products existed only from and to that territory or zone. The court upheld, however, the Commission's finding that the

Certificate was not restricted as to commodities. It also concluded that the motor carrier respondents could not complain of the amended order of the Public Service Commission in case No. S–874 issued May 24, 1946 since the record shows that their certificates of authority were issued subsequent to the issuance and transfer of Certificate No. 175 to Northern Transportation Company. With reference to the railroad respondents however the court found that no notice of hearing was given them before making the amended order in Case S–874 on May 24, 1946, and concluded that the amended order unlawfully enlarged and extended the operating authority of Special Certificate No. 175 to the extent that it provided:

"Except that livestock, heavy set-up machinery, household goods, emigrant movables and petroleum products in bulk may be transported between points and places within the State of North Dakota."

The court then directed that the proceedings be remanded to the Commission for deletion of that portion of authority just quoted and ordered the Commission to draw the Certificate issued to Balsam & De France so as to limit the authority to and from and within the following zone:

"Bounded on the east by Williams, Mountrail, Divide, Burke County lines; on the north by the International Boundary Line; on the west by the North Dakota-Montana State Line; and on the south by a county road running east of Fairview, Montana to a junction of U. S. Highway No. 85 and State Highway No. 23".

From this judgment both the Public Service Commission and Balsam & De France appealed to the Supreme Court.

The specifications of error as set forth by the appellants, the Public Service Commission and Balsam & De France may be summarized in three propositions:

"1. Whether or not special certificate No. 175, as originally issued in 1934 authorized the transportation of freight between all points and places in the State, or whether it was limited to service to and from the vicinity of Williston.

"2. Whether or not the railroad respondents are now barred from objecting to the amended order of the Public Service Commission, dated May 24, 1946 in case S–874 on the ground of laches.

"3. Whether or not the amended order issued by the Public Service Commission on May 24, 1946 in case S–874 unlawfully extended the authority of special certificate No. 175 beyond the scope of the notice given to the railroad respondents."

■ We shall first consider the second proposition urged by the appellant.

It is established by the undisputed facts, the substance of which has been set out herein, that the railroad respondents were served with notice of the hearing upon the application of Northern Transportation Company for authority to sell and assign Certificate No. 175 to Balsam & De France. The hearing was had before the Public Service Commission on February 7, 1951, at Dickinson, North Dakota. The railroads appeared at the hearing by their counsel, participated in the proceedings and objected to the transfer of Special Certificate No. 175 from Northern Transportation Company to Balsam & De France. They contended that the amended order of May 24, 1946 was an enlargement of the authority under original certificate No. 175; that no notice of any hearing thereon had been served on the railroads, and that the Commission was without jurisdiction to make said amended order.

The Public Service Commission issued its findings of fact and order, March 14, 1951, approving the transfer of Special Certificate No. 175 to Balsam & De France. True and complete copies of the order were sent by registered mail to the attorneys for all the railroad respondents on March 20, 1951. Under Section 28–3215

NDRC 1943 the railroad respondents had the right of appeal from said order.

Said Section 28–3215 provides:

"Any party to any proceeding heard by an administrative agency, except in cases where the decision of the administrative agency is declared final by any other statute, may appeal from such decision within thirty days after notice thereof has been given. * * *"

The order of the Public Service Commission issued March 14, 1951 was a final order. The Commission had jurisdiction over the subject matter and had power to issue such order under Section 49–1810 NDRC 1943 as amended by Chapter 277 Session Laws of 1945 which provides:

"Special common motor carriers may transport commodities within their authority in any quantity but only from or to that territory or zone for which they heretofore lawfully served, proved or hereafter may prove, public convenience and necessity. A special common motor carrier shall have the authority:

"1. To transport household goods, emigrant movables, livestock, and farm supplies, or other special commodities or general commodities in truckloads as defined by the commission, from or to points not in such zone or between points on Class A routes, by the authority and under the conditions and rules set by the commission;

"2. * * *."

The railroads were parties to the proceedings in which the order was issued. They did not appeal from the order and it became final when the time for appeal had elapsed.

The present appeal was taken by the Public Service Commission and Balsam & De France from the judgment of the district court which reversed the order of the Public Service Commission made January 29, 1952 in the matter of the application of the four motor carriers for a "Cease and Desist" order against Balsam & De France. The railroad respondents, as interveners, joined in the application of the motor carriers and collaterally challenged the order of the Commission made March 14, 1951 in the matter of transfer of Certificate No. 175 to Balsam & De France. No appeal was taken from that order and it had become final. As a general rule an order or determination of an administrative body having jurisdiction under authority of law is not subject to collateral attack in the absence of fraud or bad faith.

In 73 C.J.S., Public Administrative Bodies and Procedure, § 145, page 478, it is stated:

"As a general rule, the decisions or orders of an administrative body are, in the absence of evidence to the contrary, presumptively correct and valid. Thus there is a presumption that legal duties and statutory requirements were complied with, that facts justifying a ruling were in existence, and that there was sufficient evidence on which to base the decision of the agency. So also, the action of an administrative board or officer, when done in the course of official duty, is generally presumed to have been done in good faith and imports verity. Unappealed-from orders must be assumed to be fair, just and reasonable, but the presumption in favor of an administrative decision is more potent with respect to a finding of fact than it is with respect to a question of law."

In the same volume, same subject, § 146, Collateral Attack, pages 479, 480 the rule is stated as follows:

"The order or determination of an administrative body, acting within its jurisdiction and under authority of law, is not subject to collateral attack, in the absence of fraud or bad faith, the only method of attack available being by appeal as provided by statute. The rule is particularly applicable where the question in issue is one that requires a background of specialized

experience, so that the administrative agency is peculiarly qualified to determine it."

See also Application of M. & S. Transport Co., 153 Neb. 260, 44 N.W.2d 585.

Since the order of March 14, 1951 had become final and no appeal having been taken therefrom, the railroads were not in position to challenge it by collateral attack in the subsequent proceedings brought by the four motor carriers. It follows therefore that the judgment of the district court erroneously held that the order of the Public Service Commission of March 14, 1951 was void.

With reference to the four motor carriers, Hvidsten Transport, Transport Inc., Dugan Oil and Transport Company and Indianhead Truck Line, the record shows that their operating certificates were issued after the amended order of May 24, 1946, and subsequent to the reissuance of Special Certificate No. 175 to Northern Transportation Company. They were not at that time in the transportation business in North Dakota and were not in position to attack the amended order of May 24, 1946 and the reissuance thereunder of Special Certificate No. 175. The district court held:

"That since the petitioners, now appellants, were not holders of any certificates and were not engaged in the transportation of goods in North Dakota at the time of the amended findings in case No. S–874 they cannot be heard to complain of the orders of the Public Service Commission therein; that they are not such interested parties as to have any right to complain thereof, and object thereto. * * *"

The four motor carriers took no cross-appeal from the judgment of the district court and must therefore be deemed to be bound thereby.

In the joint brief of the railroads and the four motor carriers, it is stated:

"Respondents agree with appellant, Balsam & De France, when it states

on pages 93 and 94 of its brief, that many issues have been eliminated. The issue of whether or not the motor carrier respondents were entitled to notice in the 1951 transfer hearing is now out of the case."

In view of our conclusion herein it will not be necessary to consider the other specifications, urged by appellants.

After a careful consideration of the lengthy record we are agreed that the judgment of the district court should be reversed, except as to the dismissal of the complaint of the four motor carrier respondents.

The case is remanded to the district court with directions to enter judgment reinstating the findings and order of the Public Service Commission made March 14, 1951.

It is so ordered.

MORRIS and GRIMSON, JJ., concur.

JOHNSON, J., did not participate.

BURKE, Chief Justice (dissenting).

The original certificate of public convenience and necessity in this case was issued to Northern Truck Line of Williston on February 7, 1934. Early in 1946 an application for authority to sell the Northern Truck Line to Northern Transportation was filed with the Public Service Commission. Notice of hearing upon this application was served upon all railroad carriers in the state. The only issue specified for consideration and determination upon such hearing was whether the sale should be authorized. None of the railroad carriers appeared or filed any objections to the transfer and on March 18, 1946, the sale was authorized by order of the commission. Thereafter on May 24, 1946, without any notice or hearing the commission entered an order which substantially enlarged the territory authorized to be served by virtue of the transferred certificate of public convenience and necessity.

. "Whenever an administrative agency, * * . * shall hold any hearing or make any independent investigation upon the claim or request of any person, no decision shall be made by the agency until all parties in interest shall have been furnished with a written specification of the issues which are to be considered and determined * * *."

It is clear that the order of the commission enlarging the territory authorized to be served by the Northern Transportation Company was issued in violation of the provisions of the above statute.

"A public utility commission, being unknown to the common law, derives its authority wholly from constitutional or statutory provisions, and it possesses only such powers as are thereby conferred, * * *."

73 C.J.S., Public Utilities, § 38, p. 1064; Petition of Village Board of Wheatland, 77 N.D. 194, 42 N.W.2d 321; State ex rel. Lemke v. Chicago & N. W. R. Co., 46 N.D. 313, 179 N.W. 378. And "where power is given a commission to do a certain act in a certain manner, the manner prescribed is the measure of the power given." 73 C.J.S., Public Utilities, § 39, p. 1076.

In the Wheatland case, supra, 77 N.D. at page 218, 42 N.W.2d at page 335, we quoted with approval from 42 Am.Jur. (Public Administrative Law, Sec. 68) 379 saying:

"The powers conferred upon the commissioners 'must be exercised in accordance with the statute bestowing such powers and they can act only in the mode prescribed by the statute * * *. They cannot rightfully dispense with any of the essential forms of proceedings which the legislature has prescribed for the purpose of investing them with power to act.'"

In my opinion the legal principles above stated are correct and for that reason it is my conclusion that the order of the commission enlarging the territory to be served by the Northern Transportation Company was wholly void because the commission had no power to issue it.

In November 1950, an application was made to the Public Service Commission for authority to transfer the certificate, here in question, from Northern Transportation Company to Balsam and De France. A notice of hearing upon the application was served upon all the railroads doing business in the state. In that notice the only issue specified for consideration and determination was whether the transfer should be authorized. Upon the hearing upon such transfer the railroads attempted to inject into the case the question of whether public convenience and necessity existed for the authority conferred by the certificate. The commission sustained all objections to the reception of evidence concerning this issue and after the close of the hearing ordered the transfer of the certificate to Balsam and De France. No appeal was taken from this order. It is my view that the evidence concerning public convenience and necessity was properly excluded. The sole issue before the commission as specified in the notice of hearing was whether the certificate as amended in 1946 should be transferred. At that hearing the commission had no power to consider or decide any other issue.

It is the opinion of the majority that because the railroads attempted to raise the question of public convenience and necessity at this hearing and, after the evidence on this question was excluded and an order made directing the transfer of the certificate, failed to appeal from the order, they waived any right to attack the validity of the certificate. I cannot agree with this conclusion because, as I see it, a reconsideration of the question of public convenience and necessity or a consideration and determination of the validity of the certificate could only be had at a hearing at which those issues had been specified as the issues to be considered and determined. Neither an attempt to raise an issue which could not be considered, nor the failure to

raise another such issue, can constitute a waiver or create an estoppel. The railroads therefore had the right to challenge the validity of the 1946 certificate directly in this proceeding. That certificate is void and the judgment of the district court to that effect should be affirmed.

### On Petition for Rehearing

SATHRE, Justice.

The railroad respondents have filed a petition for rehearing. It is stated that review of the Supreme Court's decision of April 18, 1955 indicates that the decision turned upon the fact that the railroad respondents failed to appeal from the order of the Public Service Commission dated March 14, 1951 in case No. S–1142 and therefore said respondents cannot now collaterally attack that decision in the absence of fraud or bad faith. It is stated:

"The Court states that the railroad respondents appeared in Case No. S–1142 and failed to appeal from an adverse decision. That is correct. It also indicates however, that the issue presented in the instant case was also presented in that case. That is incorrect."

Case No. S–1142 is the record made in the matter of the application of Northern Transportation Company to sell Special Certificate No. 175 to Balsam & De France. This is the identical certificate sold by Northern Truck Line to Northern Transportation Company and which was amended without notice to the railroads by the order of the Commission issued May 24, 1946. The railroads stipulated, however, that after the entry of the amended order dated May 24, 1946, copies of it were mailed to representatives of all North Dakota railroads. The notice of hearing upon the application for authority by Northern Transportation Company to sell Certificate No. 175 to Balsam & De France described the area of operating authority in the identical language of the amended certificate as follows:

"Notice of Hearing

"Notice is hereby given that the Application of John P. Neadors, Bert Ellingson, and A. J. Bartlett, dba Northern Transportation Company, Williston, North Dakota to sell and Balsam & De France, Miles City, Montana to buy Special Certificate No. 175 authorizing motor freight service for the transportation of general commodities, to, from and within a territory described as follows:

"'Bounded on the east by the Williams-Mountrail-Divide-Burke County Lines; on the north by the International Boundary Line; on the west by the North Dakota-Montana State Line; and on the south by a county road running east of Fairview, Montana, to a Jct. with US Hwy. No. 85 and St. Hwy. No. 23,'

"Except that livestock, heavy set-up machinery, household goods, emigrant movables and petroleum products in bulk may be transported between points and places within the State of of North Dakota, will be considered and public hearing held thereon by the Public Service Commission of the State of North Dakota, on the 6th day of February, 1951 at 10:30 A.M., Mountain Standard Time, at the courthouse at Dickinson, North Dakota, at which time and place all interested parties may be heard and offer evidence for or against the granting of the application.

"Dated at Bismarck, North Dakota, this 15th day of January, 1951."

The notice was served upon all the railroads in the State including the respondents herein.

The railroads appeared generally at the hearing and submitted to the jurisdiction of the Commission. They objected to the transfer of the certificate to Balsam & De France. They sought to introduce evidence of convenience and necessity which in-

volved the state-wide operating authority granted by the certificate. The Commission refused to admit such testimony. Counsel for the railroads then made offers of proof as follows:

"First, we offer to show the nature and extent of the railways' service furnished in this area which is affected in the whole state of North Dakota, by time tables showing the freight trains and freight movements and facilities supplied by the railway companies for the transportation of the commodities described in Special Certificate No. 175."

Objection was made to the offer and sustained.

Counsel for the railroads:

"We now offer to show, and ask the reporter to copy into the record copies of Special freight operators certificates, No. 554, Crosby Transfer Company; No. 47, Culp Truck Lines; No. 639 Kasper Filkowski; No. 286, Reinhart Grishkowsky; 194 Hart Motor Express; 666 Hart Motor Express; No. 251, J. H. Maas; 507,

"Al Redmond; No. 260, Lorenz Sowitch;

"And then interstate freight operators as follows: Certificate No. 4 Dakota Transfer & Storage Company; No. 52 Hart Motor Express; 273 Houck Transport Company; 252 Hvidsten Transport; 196 H. F. Johnson, Inc.; 291 John H. King, Sidney, Montana;

"Also Class A. Certificates as follows: 44 and 329, Culp Truck Lines; 313 Dakota Transfer & Storage Company; 326 Minot-Portal Transfer Service; 90, Stanley Transfer;

"All of which certificates are certificates issued to operators who furnish transportation services for all or part of the general commodities and other subjects of transportation which are referred to in special certificate No. 175;

and they, together with the railroad transportation facilities heretofore referred to, are offered for the purpose of showing that the public is adequately served without the issuance, or approval of the transfer of certificate No. 175."

Ojection was made to the offer and sustained.

Counsel for the railroads:

"And further we offer to show generally that the transportation facilities of the kind and character described in Certificate No. 175 are adequate and that no public convenience or necessity exists for the continuance of this certificate or the transfer thereof; that the effect of the approval of this would simply be to put another competitor in the transportation field who would attempt to take business away from carriers who are now adequately taking care of the public."

Objection was made as follows:

"That is objected to on the ground and for the reason that the question of convenience and necessity and adequacy of present facilities is not an issue before the Public Service Commission at this time." "Objection sustained."

The railroads contend that the Public Service Commission exceeded its statutory authority in amending special Certificate No. 175 ex parte and thereby enlarging the scope of activity permitted under it so as to provide

"that livestock, heavy set-up machinery, household goods, emigrant movables and petroleum products in bulk may be transported between points and places within the State of North Dakota."

The railroads are not now in a position to challenge the authority so granted. Certificate No. 175 was originally issued on February 7, 1934, pursuant to the authority provided in Chapter 164 SLND 1933.

The realities are that although the original certificate was restrictive in form, certificate holders were permitted to operate on a state-wide basis. From 1942 to 1946 the Northern Truck Line transported quantities of petroleum products in bulk under the authority of Certificate No. 175. On March 18, 1946, the Commission after notice and hearing authorized the sale and transfer of the certificate from the Northern Truck Line to Northern Transportation Company. Thereafter the purchaser asked that the certificate be amended so as to broaden its authority to include state-wide operations. The railroads had been made parties to the proceedings to transfer the certificate to the Northern Transportation Company but received no notice of any application to amend it. However, copies of the amended certificate were furnished to the attorneys for the railroads shortly after it was issued on May 24, 1946. The only statute dealing with the amendment of a certificate by the Commission is Section 49–1816 NDRC 1943 which provides:

"The commission, at any time, for good cause, may suspend and, upon not less than five days' notice to the grantee of any certificate, and on opportunity to be heard, may revoke or amend any certificate."

The Commission is clearly vested with general power to amend a certificate and the only party to whom this statute requires notice to be given is the grantee. In this case the grantee was the applicant for the amendment. When original Certificate No. 175 was issued the Commission obtained jurisdiction of the subject matter and of the parties, including the railroads. The only position of the railroads that is at all tenable is that they being parties who might be affected by the extension of competitive service permitted by the amendment were entitled to be heard and that in the absence of notice the amendment was not binding upon them. This contention can only go to the personal jurisdiction of the Commission over the railroads. It does not involve jurisdiction over the subject matter which fell within the general powers of the Commission. See Application of Hvidsten, 78 N.D. 56, 48 N.W.2d 26.

"A failure to comply with the requirements as to notice and process may result in a failure to acquire jurisdiction, but if a general appearance is entered, jurisdiction of the person is conferred even though it was not acquired by proper service of notice or process. A general appearance without objection waives all irregularities preceding the hearing." 42 Am.Jur., Public Administrative Law, Section 121.

Our attention has been called to Petition of Village Board of Wheatland, 77 N.D. 194, 42 N.W.2d 321. In that case objection to the jurisdiction of the Commission was made by special appearance and we held that the objection was not waived by participating in the trial on the merits after the objection had been overruled.

In November 1950 the Northern Transportation Company by application to the Public Service Commission sought authority to sell and transfer the certificate to Balsam & De France. (Case No. S–1142) The certificate to be so transferred was not the original restricted certificate but the amended and enlarged certificate under which the Northern Transportation Company had operated at least part of the time since its issuance in 1946. Notice of hearing on this application for transfer was given to parties concerned, including the railroads. The notice of hearing served upon the railroads set forth the amended and the enlarged certificate verbatim. The railroads did not appear specially and object to the transfer of the enlarged certificate on the ground that it was issued without jurisdiction but appeared generally and resisted the transfer. It is clear from the record that the main reason for resisting the transfer was that the certificate permitted competitive transportation of petroleum and petroleum products on a state-wide basis. The railroads sought to challenge the public convenience and necessity of operations that might be conducted

under the amended certificate. This went not to jurisdiction but to merits of the operation permitted by the certificate.

The railroads contend that the Northern Transportation Company made little use of its authority under the certificate from 1946 when it obtained it until 1951 when it sold it to Balsam & De France. This was undoubtedly the basis for the railroads' attempt to resist the transfer on the ground of lack of public convenience and necessity but that contention goes to the merits rather than to the jurisdiction of the Public Service Commission. It is also argued that if the Commission had at the hearing in 1951 righted the wrong it had committed by issuing the ex parte amended and enlarged certificate no hardship would have ensued, an argument which again pertains to the merits and emphasizes the fact that if the railroads had then raised the question of lack of jurisdiction, as they clearly had the right and opportunity to do, no hardship would have ensued to Balsam & De France, who the record shows relied upon transfer to them of the amended certificate and thereafter engaged in the transportation of petroleum products in bulk out of Fargo and Grand Forks. It is clear to us that the railroads', having had the opportunity to raise the question of the authority of the Commission to make the ex parte amended and extended order when they appeared before the Commission and resisted on the merits the transfer to Balsam & De France, by their general appearance waived their objections to the jurisdiction of the Commission rising out of the issuance of the ex parte order and cannot now be heard to challenge the validity of that order on the ground that the Commission had no jurisdiction to make it.

In the case of Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470, 50 S.Ct. 374, 378, 74 L.Ed. 972, the Supreme Court of the United States speaking through Justice Van Devanter said:

"The thing presented for adjudication in the case in the state court was the validity of the order, and it was incumbent on the appellant to present in support of his asserted right of attack every available ground of which he had knowledge. He was not at liberty to prosecute that right by piecemeal, as by presenting a part only of the available grounds and reserving others, for another suit, if failing in that. Werlein v. City of New Orleans, 177 U.S. 390, 398, et seq., 20 S.Ct. 682, 44 L.Ed. 817; United States v. California and Oregon Land Co., 192 U.S. 355, 358, 24 S.Ct. 266, 48 L.Ed. 476.

"As the ground just described was available but not put forward the appellant must abide by the rule that a judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end. Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 319, 47 S.Ct. 600, 71 L.Ed. 1069; United States v. Moser, 266 U.S. 236, 241, 45 S.Ct. 66, 69 L.Ed. 262; Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195."

Rehearing denied.

MORRIS and GRIMSON, JJ., concur.

JOHNSON, J., did not participate